

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

TJS:TAD
F. #2013R00381

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 12, 2014

By Email and ECF

The Honorable Raymond J. Dearie
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Bebars Baslan
              Criminal Docket No. 13-220 (RJD)

Dear Judge Dearie:

      In accordance with the Court's ruling at the status conference held on July 10, 2014, the government respectfully provides the enclosed proffer concerning statements that the individual identified as "Victim 2" has made concerning about the defendant, Bebars Baslan. The government retracts its request to call the individual identified as "Victim 1" at trial.[1]

      The Government's Proffer as to Victim 2

      Victim 2 first met the defendant in 2005, when she was 15 years old and lived in Buffalo, New York. Victim 2 met the defendant because her best friend, Victim 1, had

---

[1] Victim 1 previously informed the government that she had longstanding plans to be out of the country for an extended period of time beginning July 14, 2014. The government prevailed upon Victim 1 to change her flight to July 15, 2014 so that she could testify on the first day of trial if need be. However, in light of the fact that the Court has not yet decided to admit the testimony of either Victim 1 or Victim 2, and because Victim 1's testimony would likely occur on a date later than July 15, 2014, the government has determined not to ask Victim 1 to change her plans further and to proceed without her testimony.

won a beauty pageant.  The prize for winning this pageant was a photography shoot.  The defendant was the photographer for that shoot.  Victim 1 brought Victim 2 with her for one of her photography shoots with Baslan during late summer 2005.  Both Victim 2 and Victim 1 aspired to be models.

During the photography shoot, the defendant directed Victim 2 and Victim 1 to "make out" with each other.  The defendant provided both girls with clothes to wear: white underwear and white tank tops.  At some point during the photography shoot, the defendant poured water over the girls' clothing, which made both their breasts and their vaginas visible.  He continued to take photographs of them.  The defendant also told the girls to pose as though they were performing sexual acts on each other, which they did.  This photography shoot occurred at the defendant's "studio" in Buffalo, which was located on the corner of Main Street and West Tupper Street.

Victim 2 reported that during the fall of 2005, when both she and Victim 1 were 15 years old, the defendant went to Victim 1's house, while she was having a sleepover with Victim 2.  By that time, the defendant had ingratiated himself with Victim 1's family to the point where Victim 1's parents allowed the defendant to go upstairs and visit with Victims 1 and 2.  When the defendant went upstairs, both girls were in bed.  The defendant digitally penetrated Victim 2 and Victim 1, then left.

Victim 2 continued to see the defendant a few times per week.  Many of their meetings related to photography work the defendant claimed to be capable of getting for Victim 2; as such, the defendant continued to take photographs of Victim 2, and the two became friends.  The defendant paid Victim 2 for photographs that supposedly had been used in print work.  The defendant always paid Victim 2 in cash.

During their friendship, Victim 2 confided to the defendant that she had been sexually molested by an uncle when she was seven to ten years old.  Shortly thereafter, the defendant took Victim 2 to a bar called Faherty's in Buffalo.  The defendant told Victim 2 to go to the bathroom while he purchased drinks because Victim 2 was underage.  Victim 2 and the defendant then sat at a booth in the bar.  Victim 2 remembers drinking part of her drink.  She next remembers coming to in the defendant's photography studio while the defendant was having sex with her.  The defendant appeared surprised when Victim 2 opened her eyes.  Victim 2 believes she passed out again soon after.  The defendant took Victim 2 home the next morning.  He told Victim 2's mother that they had been shooting late, and that Victim 2 was tired, so he let her fall asleep.  Victim 2 was fifteen years old at the time.

Victim 2 reported that the defendant would frequently provide cocaine for underage girls who he was hanging out with.

On a different occasion in the defendant's studio in late 2005 or early 2006, the defendant provided alcoholic beverages for Victim 2 and other underage girls.  Victim 2 vomited that evening and did not have sexual contact with the defendant.  However, Victim 2 saw the defendant go to the "back room" of his studio with another underage girl who was a

2

close friend of Victim 2.  That same night, the underage girl reported to Victim 2 that the defendant had sodomized her.  Victim 2 reported that the defendant told her that where he was from, it was "normal" to be into younger women, but in the United States it was frowned upon.  The defendant encouraged Victim 2 "not to make a big deal of it."  The defendant also told Victim 2 not to tell her mother about her sexual relationship with him because Victim 2 would "get in trouble."

   Victim 2 also reported that she went out with the defendant a different night in 2006.  Again, the defendant provided Victim 2 an alcoholic drink, and again, Victim 2 does not remember much of the night.  However, she woke up to a sharp pain because the defendant was trying to have anal sex with Victim 2.  Victim 2 also reported that when she was sixteen, the defendant took her and other underage girls to a motel called either the "Pink Flamingo" or the "Pink Fountain."  Victim 2 believes the defendant put something in her drink that evening because she does not remember the majority of the night and she did not consume any alcohol save a "raindrop" shot.

   On Victim 2's seventeenth birthday, the defendant told Victim 2 that she should have a party in his studio.  Victim 2 brought her close friends, most of whom were 16 years old.  The defendant provided cocaine for Victim 2 and her friends and they went to a bar.  Later that night, while the defendant and Victim 2 were walking in downtown Buffalo, Victim 2 ran into a friend, Victim 3.  The defendant took Victim 2 and Victim 3 back to his apartment and videotaped Victim 2 and Victim 3 "making out."  The defendant also "shoved" his penis in Victim 3's mouth while he videotaped it.

   Victim 2 stopped seeing the defendant as frequently after she turned 17 and moved in with a girlfriend.  When she turned 18, Victim 2 lost touch with the defendant.

   When Victim 2 was 18 or 19, the defendant went to Spot Coffee, a coffee shop where Victim 2 frequently went because her girlfriend worked there.  The defendant asked Victim 2, in sum and substance, if she would sign a document indicating that she had never had sex with the defendant.  Victim 2 reports that her girlfriend saw the defendant talking to her, and based on the defendant's body language, realized he was threatening Victim 2.  Victim 2's girlfriend then forced the defendant to leave the coffee shop.  Victim 2 never saw the document the defendant was trying to get her to sign.  During this conversation, the defendant told Victim 2 that his family was wealthy and they could help her if she signed the document.  The defendant also stated that his family was very powerful and implied that if she did not sign the document, something bad might happen to her.

   A forensic search of the defendant's laptop revealed multiple copies of an unsigned affidavit that reads as follows:

> My name is [Victim 2].  I am 19 years old.  I currently reside at _____.
>
> On or about November 200f, I came to work with Bebars Baslan as a model in

3

photography. Mr. Baslan has been and to this day conducts himself in a very professional manner.

We always had a chaperone present during all photography shoots in which I was involved. All photography shoots were appropriate to my age at the time.

We never had a romantic relationship, and at no time did Mr. Baslan solicit my affections. He has never solicited nor suggested that we engage in any active physical intimacy, nor have we had intimate relations of any kind.

I [Victim 2], being first duly sworn on oath according to law, deposes and says that she has read the foregoing AFFIDAVIT, that the matters stated herein are true to the best of her information, knowledge and belief.

_____
Victim 2

SUBSCRIBED TO AND SWORN to before me this _____


_____
Notary Public
My commission expires

      Additional draft affidavits for two other individuals, including Victim 1, also were found on the defendant's laptop.

The information provided herein previously has been provided to the defendant in notes that were provided to defense counsel on June 30, 2014 and in Jencks Act disclosures made to the defendant on July 9, 2014.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/
Tiana A. Demas
Tyler J. Smith
Assistant United States Attorneys
(718) 254-6116/6186

cc: Ephraim Savitt, Esq.
Clerk of Court (RJD)