UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                                      13 CR 220 (RJD)

   -against-


BEBARS BASLAN, *et al.*
                            **Defendant**

-------------------------------------------------------------X


# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BEBARS BASLAN'S POST-TRIAL MOTIONS

                                                Ephraim Savitt, Esq.
                                                *Attorney for Defendant Bebars Baslan*
                                                260 Madison Avenue, 22nd Floor
                                                New York, New York 10016
                                                Tel.: 212-679-4470
                                                Fax: 212-679-6770
                                                Email: Ephraim@Savittesq.com

<u>UNITES STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK</u>          X

**UNITED STATES OF AMERICA,**

<u>DOCKET NO.
13 CR 220 (RJD)</u>

-against-

**BEBARS BASLAN, et al.**

          **Defendant.**

_____X

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BEBARS BASLAN'S POST-TRIAL MOTIONS

### <u>PRELIMINARY STATEMENT</u>

  This memorandum is respectfully submitted in reply to the government's Memorandum in opposition to Bebars Baslan's Post-Trial Motions dated November 24, 2014 ("G.M."). The reply is focused on the government's arguments regarding Baslan's motion to dismiss count one on 8th Amendment grounds, as well as its understandable attempt to disregard the mountain of empirical and anecdotal data and case law that proves, beyond any serious challenge, just how disparate the imposition of a 30-year mandatory sentence on a defendant for whom there is absolutely no evidence of actual prior or contemplated child rape or molestation would be. The <u>Massiah</u> prong of Baslan's post-trial motions has been sufficiently briefed as not to require

1

additional argument, and we rely on our prior submission as to that prong of the post-trial motions.

## ARGUMENT

**BASLAN HAS STANDING TO ASSERT DISMISSAL OF COUNT ONE ON CONSTITUTIONAL GROUNDS BASED ON A STATUTE MANDATING GROSSLY DISPROPORTIONATE PUNISHMENT FOR HIM; THE SOLEM TRIPARTITE TEST MAINTAINS ITS VALIDITY TO TEST THE CONSTITUTIONALITY OF SUCH A STATUTE**

a)   **Baslan's Standing to Assert the Claim:**

The government launches a two-pronged attack on Baslan's 8th Amendment claim. In an astonishingly creative argument, backed up by literally no relevant authority, the government contends that the 8th Amendment claim is "premature" and that Baslan has no standing to assert it because he has not yet been sentenced. GM at 21-25. The government's logic is that the Court may decide to sentence Baslan to 30 years or more either for the Travel Act conviction or for the other counts, none of which carry mandatory-minimums greater than 15 years, which would make the application of the Travel Act's 30-year mandatory-minimum under 18 U.S.C. §2241(c) incapable of "adversely affecting his sentence." Conversely, the government reasons, if the Court decides to sentence Baslan to less than 30 years on count one, in the same manner as Judge Weinstein had in United States v. C.R., 792 F. Supp. 2d 343 (E.D.N.Y. 2011), rev'd, 731 F.3d 204 (2d Cir 2013) (involving a sentence of 2-1/2 years for child pornography distribution which carries a 5-year mandatory-minimum), then Baslan could not suffer a "sentencing injury" cognizable under the 8th Amendment and, concomitantly, would not be raising a "case or

2

controversy" to be adjudicated by the Court prior to sentence. What utter nonsense. Talk about putting the "cart before the horse"!

This is a Rule 29(c) motion for dismissal of count one based on a constitutional claim. True, Baslan has not yet been sentenced. But that is true of every post-trial motion for dismissal which is aimed exclusively at averting or ameliorating punishment on the count of conviction being attacked. He is the one facing the 30-year mandatory sentence. Not some third party. And not theoretically, but actually, unless the Court accepts his 8th Amendment challenge to the validity of the Travel Act's imposition of the 30-year mandatory-minimum.

In a case cited by the government, United States v. Rivera, 546 F. 3d 245 (2d Cir. 2008), which the government obviously failed to read completely, despite its relative brevity, the government's transparently baseless standing argument is expressly rejected by the Second Circuit. In Rivera the Second Circuit held that because the defendant failed to raise the 8th Amendment claim in the district court, "we deem it forfeited." Id. At 254, relying on United States v. Feliciano, 223 F.3d 102, 125 (2d Cir. 2000) (where the Court held that there was "no reason why [the defendants'] constitutional challenges could not have been raised below, where he had ample opportunity to raise them and where the district court would have had ample opportunity to address them."). Thus, the best that can be said for the government's standing argument is that it is premised on a misconceived understanding of the law. Or is it actually "disingenuous, at best," to quote the government's attack on our arguments. (G.M. at p. 31, footnote 31).

Moreover, the government's specious arguments that a total sentence or either more or less than the Travel Act's 30-year mandatory minimum would eliminate any cognizable constitutional "sentencing injury" simply ignores the reality of the sentencing process. There is

3

no precise formula, advisory guidelines notwithstanding, by which a sentencing court arrives at the result that it considers appropriate to address the statutory sentencing factors in a particular defendant's case. But to suggest, or does the government, that a statutory 30-year mandatory-minimum does not set a bright-line threshold by which the ultimate sentence is measured simply defies reality. Given that a sentencing court would be reluctant to challenge the imposition of a statutorily-mandated minimum sentence pursuant to the statute that expressly mandates such a sentence, the only reasonable basis for imposing a sentence below that level, should the Court accept our position that such a result is constitutionally infirm, is to find that the statutory penalty is unconstitutional.

Without question, had Baslan failed to raise the issue now, and waited until after being sentenced to 30 years under the Travel Act, while being sentenced to lesser terms on the other counts of conviction, the government on appeal would have argued that he failed to preserve this issue properly and so that, at the very least, the more stringent "plain error" standard of appellate review would govern the 8th Amendment claim being raised for the first time on appeal. Or, as is more likely after reading <u>Rivera</u> thoroughly, the government would maintain that Baslan had "forfeited" the constitutional claim by failing to raise it prior to sentencing.

Moreover, it is anomalous that the government, while deciding to assert standing on the Travel Act offense by tricking Baslan to travel to New Jersey, thereby exposing him to the 30-year mandatory minimum, now contends that that this statute will not necessarily "adversely" affect him so as to create a "case or controversy." Why is standing such an elusive concept in the government's mind that it has different meanings for different parties at different stages of the proceedings? Does the government really believe that Baslan's hands are procedurally hogtied from challenging the constitutionality of the penalty section of the Travel Act until <u>after</u> he is

4

sentenced? Would such a decision by his counsel be defended successfully by the government as proper advocacy when, several years from now, after I may have disappeared from the scene, the young able prosecutors and/or their younger and perhaps equally able successors-in-interest are confronted with a §2255 petition asserting counsel's "ineffectiveness" for failing to raise, in a timely fashion, the constitutional challenge to the statute that blindly applies a 30-year mandatory-minimum equally to both the worst-of-the worst serial, violent, recidivist child rapists and to a defendant, with no prior similar conduct, whose intent was limited, at most, to taking photos of his accomplice merely touching or licking a child's genitalia?

This issue is being raised at this juncture not due to my concern that the government may not be able to prevail in future habeas challenges based on my claimed "ineffectiveness"; it is being raised prior to sentencing in a post-trial dismissal motion to protect my present client's rights for sentencing and perhaps appeal, including the 8th Amendment's protection against cruel and unusual punishment. Standing is the wrong argument to make for a variety of reasons, not the least of which is that a statutory automatic 30-year sentence certainly will produce the kind of injury for which the 8th Amendment was adopted by the First Congress of the United States over 300 years ago.

**b)     The Solem Proportionality Tripartite Test Still Lives, Notwithstanding the Government's Premature Obituary for that Controlling Precedent:**

The government continues to astonish by contending that the U.S. Supreme Court in Harmelin v. Michigan, 501 U.S. 957 (1991), eviscerated the tripartite factor test of Solem v. Helm, 467 U.S. 277 (1983). Without the slightest pretense as to whether the Harmelin opinion actually supports its position, the government maintains that a plurality of the Supreme Court Justices in Harmelin decided that "the Solem tripartite test is not controlling" and that "the defendant's reliance on the Solem test is disingenuous at best." (G.M. at p. 31, footnote 31).

Extending its flawed reasoning, the government contends that the <u>Harmelin</u> plurality opinion eviscerated the precedential value of the <u>Solem</u> tripartite test by, in essence, setting no standards by which to measure a claimed 8th Amendment violation other than that the "precise contours" of the "narrow proportionality" principle "are unclear." <u>Harmelin</u> 501 U.S. at 997-98 (Kennedy, J., concurring). (G.M. at pages 25-31).

Unsurprisingly, the government prefers to ignore that actual plurality holding of <u>Harmelin</u> that clearly affirms the continued vitality of the <u>Solem</u> tripartite test and that no less than 6 of the 9 Justices on the <u>Harmelin</u> Court expressly held that the <u>Solem</u> test is controlling. I say this without any disingenuousness, and I will not reciprocate by calling the government "disingenuous" simply because it misread the plurality opinion as it pertained to <u>Solem</u>.

It is likely that this misreading produced the government's flawed argument on the 8th Amendment issue because only in this manner, can it blithely ignore the mountain of federal and state governmental statistical analyses set forth in Baslan's comprehensive memorandum and its exhibits that disclose that the average sentences for child rapists and serial offenders was 12 years and that, stated from a proportional perspective, Baslan's 30-year sentence would be 2-1/2 times as long as the average sentence for child rapists.

Those statistics disclose the grossly disproportionate punishment that the Travel Act's mandatory 30-year minimum sentence would inflict on a first-time offender who never raped, molested or harmed a child and whose design, at most, was to take pictures of his girlfriend licking the penis of a baby. By contrast, as we set forth in exhaustive detail in Baslan's memorandum, the average sentences for child rapists, both in the New York metropolitan area as well as across the country, as measured by empirical data provided by the Justice Department from sex crime sentences imposed in the 75 most populous counties in the United States, is 12

6

years, which is 18 years less than the Travel Act's mandatory minimum and an astounding 33 years less than the "multiple murders" punishment recommended by the PSR Addendum.

Instead, the government opts for deciding that <u>Solem's</u> first prong --whether the "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality," <u>Harmelin</u>, 501 U.S. at 1005 (Kennedy, J. concurring); <u>Solem</u>, 463 U.S. at 298-300-- is the sole controlling factor and then makes the leap to its conclusion that a 30-year sentence "is simply not constitutionality disproportionate to the crime of crossing state lines with the intent of sexually molesting a child under the age of 12." (G.M. at p. 36). The government arrives at this summary judgment without even bothering to explain how it is possible for anyone to decide constitutional proportionality by "comparing" the crime committed and the punishment imposed, without taking account of the criminal sentences imposed in the same jurisdiction for crimes in general (<u>Solem</u> prong two) and the sentences imposed in other jurisdictions for the same kind of crime (<u>Solem</u> prong 3). What can anyone be comparing the crime and resulting sentence with unless it is to the two other <u>Solem</u> categories? As Justices Blackmun and Stevens, in dissenting from the judgment of the majority in <u>Harmelin</u>, observed:

> The first prong of <u>Solem</u> requires a court to consider
> two discrete factors -- the gravity of the offense and
> the severity of the punishment. A court is not expected
> to consider the interaction of these two elements and determine
> whether the sentence imposed was grossly
> excessive punishment for the crime committed.
> Were a court to attempt such an assessment, it would
> have no basis for its determination that a sentence
> was -- or was not -- disproportionate, other than the
> subjective views of individual [judges]."

<u>Harmelin</u>, 501 U.S. at 1020 (White, J. dissenting) (citations omitted).

7

Justice Kennedy, writing for the controlling plurality, did not disagree with Justice White's observation at all. Instead, Justice Kennedy recognized that the "proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime. This conclusion neither 'eviscerate[s] Solem, nor 'abandon[s]' its second and third factors." Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring).

Given that Justice Kennedy, joined by Justices O'Connor and Souter, in concurring, and that Justice White, joined by Justices Blackman and Stevens, in dissenting, all agreed that the Solem tripartite test has continued validity, the government's accusation that Baslan's anchoring of his 8th Amendment argument on the three Solem factors is "disingenuous at best," which is a nice way of saying that the author of that argument is deliberately attempting to mislead the Court, seems unduly heavy-handed and misplaced.

Although, concededly, the concurring Justices found, under the facts of Harmelin, that the sentence in that case was not disproportionate to the crime without the need to analyze the other two Solem factors, that is not the same thing as saying that Solem is "not controlling," as the government argues. It means that, in certain cases where "the gravity of the offense compared to the severity of the penalty" is sufficient by itself to determine constitutional proportionality, the analysis prescribed in Solem's second and third prongs would be superfluous. Yet, as the Harmelin dissent points out, it defies logic that this proportionality analysis can be conducted solely by looking at the sentence imposed in this case without comparing it to sentences imposed in other cases.

The rationale of the plurality in Harmelin appears to rest on three factors, as set forth in Justice Scalia's opinion, in writing the Court's decision. The first is that the Michigan statute under which the defendant was sentenced to life allows for parole eligibility after only 10 years

8

in prison (Harmelin, 501 U.S. at 961, note 1). By contrast, there is no parole in the federal system, and the Travel Act's 30-year mandatory-minimum, if applied to Baslan, will require that he serve his entire sentence, less a small percentage for "good time."

The second is that the defendant in Harmelin possessed a quantity of pure cocaine sufficient to yield "between 32,500 and 65,000 doses" for drug users who, in turn, "may commit crime[s] because of drug-induced changes in physiological functions, cognitive ability and mood… [or] in order to obtain money to buy drugs…[and] "violent crime[s] may occur as part of the drug business or culture." Id. At 1003. The dangers of drug distribution are manifest because there is no finite way of measuring the adverse "domino effect" of consequences that will ensue from the possession of a substantial quantity of pure cocaine. By contrast, Baslan's actual Travel Act offense was, at most, aimed at inappropriate touching, rather than rape, sodomy or violence. Whereas any child sex offense is disturbing and abhorrent, the consequences of the act for which Baslan travelled to New Jersey certainly fails to rise anywhere near the level of potential adverse consequences affecting many lives resulting from possession with intent to distribute of a large amount of pure cocaine.

The third factor, as Justice Scalia pointed out, is that "Michigan's sentencing scheme establishes graduated punishment for offenses involving rising amounts of mixtures containing controlled substances." Harmelin, 501 U.S. at 1007. Thus, as in the federal narcotics sentencing scheme, the Michigan narcotics laws differentiate, on the dubious, yet concrete, basis of the amounts of drugs involved, the degrees of sentences for such crimes. Under the Michigan drug statute, a drug offender, depending on the amounts and kinds of drugs he possessed to distribute, might be sentenced to a term of 0 to 20 years, or 10 to 20 years, or 20 to 30 years, or if he possessed over 650 grams of cocaine, as in the Harmelin case, a mandatory life sentence. Id.

9

This graduated punishment scheme, based on a readily measurable factor of drug quantity, is what distinguishes the Michigan drug sentencing statute from the Travel Act.

Under 18 U.S.C. §2241(c), there is no differentiation in punishment based on any measurable factor. It is of no moment whether the offender is a recidivist, serial rapist or a first time actor with no evidence whatsoever of prior similar conduct. It makes no difference if the objective of the offense was to rape or sodomize or physically harm a child, or all three of those acts, or whether, as in Baslan's case, it was to be the mere touching of a child's genitalia. The inherent constitutional infirmity of the Travel Act is that it makes no distinctions at all among defendants facing mandatory-minimum 30-year terms either on the basis of the general culpability and criminal history of the offender, or on the gravity of the offense or on the extent of potential or actual harm to the victim or victims.

Instead, this one-size-fits-all mandatory punishment cannot be evaluated for constitutional disproportionality solely on the basis of the first Solem factor. Without considering the other two Solem factors, the disproportionality analysis is impossible. Given that the government prefers to rely on an absolute, yet insupportable proposition that a 30-year sentence is simply not disproportionate because the statute says it's OK is hardly the way to conduct a proper constitutionality inquiry.

Yet, it is telling that the government submits an 8th Amendment presentation that is divided between a standing argument that has no legs and an overturning of Supreme Court precedent that two thirds of the Justices on the Supreme Court at the time of the opinion it relies on expressly declared was still good law. No attention is given to the sentencing statistical data and comparisons that establish, beyond any doubt, that imposition of a 30-year sentence for Baslan would be grossly disproportionate.

Instead, the government finds it for more expedient to declare that <u>Solem</u> is a dead-letter and that there is no reason to look to its comparative analysis factors that the Supreme Court, in its controlling plurality, as well as in the opinion of two-thirds of its members, has never disavowed. The reason for that is evident, as the government, by its silence as to the statistical information that its own Department of Justice published, as well as the New York State data, has no argument to pose beyond its misreading of the proper evaluation of the <u>Solem</u> first factor. There is no way the government can win a proportionality argument under the <u>Solem</u> tripartite test if the Court reviews the constitutionality of a 30-year sentence in this case by looking at <u>Solem's</u> second and third factors, as is appropriate in this case. And the government obviously knows it.

It can only prevail by persuading the Court to find, based on nothing more than the statute being challenged, that a 30-year sentence would not be disproportionate simply because the Travel Act says so. But that is not the way to go in addressing an 8th Amendment disproportionality claim. As Justice White observed, "the fact that a punishment has been legislatively mandated does not automatically render it 'legal' or 'usual' in the constitutional sense. If this were the case, then the prohibition against cruel and unusual punishments would be devoid of any meaning." <u>Harmelin</u>, 501 U.S. at 1016-1017 (White, J. dissenting).

Justice White went on to observe that "the suggestion that a legislatively mandated punishment is necessarily 'legal' is the antithesis of the principles established in <u>Marbury</u> v. <u>Madison</u>, 1 Cranch 137 (1803), for '[i]t is emphatically the province of the judicial department to say what the law is,' <u>id</u>. at 5 U.S. 177, and to determine whether a legislature enactment is consistent with the Constitution." <u>Harmelin</u>, 501 U.S. at 1017 (White, J. dissenting). Perhaps the government disagrees with the principles of <u>Marbury</u> v. <u>Madison</u> and prefers that the courts have

11

no reviewing power over the constitutionality of draconian sentencing provisions that are devoid of any proportionality in their scope and effect. Unstated by its sua sponte overturning of Solem, the government appears to be advocating the disappearance of the seminal Supreme Court case defining the separation of powers principles and judicial review obligations that have been the bedrock of our judicial system for over three centuries.

Equally astonishing is the government's blanket statement that "[e]qually devoid of support in Supreme Court precedent in the defendant's contention that in reviewing the constitutionality of a sentence, the Court 'makes no distinction between capital punishment and a felony prison sentence'." (G.M. at page 31, footnote 5). Perhaps the government has another dimensional set of Supreme Court opinions with the same names as those which the rest of us read. Hamelin's controlling opinion says flatly that "Eighth Amendment proportionality principle also applies to non-capital sentences." 501 U.S. at 997 (Kennedy, J. concurring). See Rummel v. Estelle, 445 U.S. 263, 271-274, in which, to quote Justice Kennedy, "we acknowledged the existence of the proportionality rule for both capital and noncapital cases." Harmelin, 501 U.S. at 997 (Kennedy, J. concurring). Where the government gets its stare decisis information remains an enigma.

In Rummel, cited by the government as support for its proposition that the Travel Act's heavy-handed punishment provision applies to this case, the Supreme Court upheld the application of the Texas state "three strikes" life sentence to defendant convicted of 3 minor fraud and forged check felonies. The government forgets to mention, however, as pointed out by the Court in Rummel, is that the policy of the Texas state system has "historically allowed a prisoner serving a life sentence to become eligible for parole in as little as 12 years." 445 U.S. at 280. That makes the life sentence imposed in Rummel a whole lot less of a problem for the

defendant in that case than Baslan faces – specifically, it bears repeating, 18 years less than the Travel Act mandatory-minimum and a whopping 33 years less than the outlandishly disproportionate sentence recommendation by probation.

In Rivera, which is cited by the government but is completely distinguishable from this case, the Second Circuit upheld the defendant's life sentence on a record markedly different from the one in our case. As the Court observed, "[a]fter Rivera served a state sentence for molesting his niece and nephew throughout their childhood, he sexually exploited four adolescent boys, one of them only 13 years old." 546 F.3d at 255. Given that Rivera was an unrepentant, long time child sex offender and, even after serving a prison term, emerged as an unredeemable recidivist child sex offender, the Second Circuit concluded that "[i]n light of the gravity of Rivera's offense and his recidivist nature, we cannot 'draw an inference of gross disproportionality' from the mandatory life sentence at issues here'." Id., citing Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring). The differences between the Rivera and Baslan cases are so stark and obvious that, far from supporting the government's position, Rivera actually undermines it.

A measure of the stark disproportionality posed by the Travel Act can be found in the recent victim impact statements recently submitted by probation as to the suffering of a few of the girls who were subjected to unwanted starring roles as children in child pornography photos and videos downloaded from the internet in the zipped files in Baslan's home computer. One such report details that a child victim was abused while in her pre-teen years for 6-to-7 years by her father who, while he had sole custody of her, continuously sexually molested and digitally invaded her and tried to rape her multiple times, but was physically unable to accomplish that because she was too small. To make matters even more revolting and heinous, her father

13

committed those unpardonable acts while taking photos and videos, which were then posted on the internet, and he actually encouraged her to invite her little friends to join in those activities while he filmed them. Can a worse parent even be conjured up by the imagination? Yet, as the report states, the victim finds "great comfort" in the fact that her father was sentenced to 24 years imprisonment because she is now "protected' from him.

Baslan had nothing whatsoever to do with that girl's victimization or the dissemination of the child pornography that her father produced. Yet, probation, and undoubtedly the government, desires to use this information, at least in some measure, to justify the Travel Act punishment for Baslan. Instead, this information only fortifies the gross disparity created by the 30-year mandatory punishment provision, which is 6 years greater (assuming no parole or good time reductions) than that imposed on a human beast who used his little girl to fulfill his sick sexual urges and posted the horrific photos and videos of his predatory actions for the better part of a decade on the internet. If that does not embody gross disparity, then the 8th Amendment's protection has literally no meaning other than as a theoretical anachronism.

Similarly, the government's suggestion that its position finds support in United States v. Yousef, 327 F.3d 56 (2d Cir. 2003), is sheer nonsense. Yousef faced life imprisonment for his conviction of terrorism crimes that included his direction of an international conspiracy to bomb U.S. commercial airliners in Southeast Asia, with the aim of blowing up hundreds of innocent passengers. Yousef was also convicted at a separate trial for his leadership role in the first attack on the World Trade Center in 1993, which involved setting off a powerful bomb in the garage underneath the Twin Towers that resulted in the death of six people, injuries sustained by more than a thousand others and more than 500 million dollars in property damage. Does Baslan stand on the same footing for punishment as the most notorious terrorist mass murderer in the pre-911

14

era? Once again, the government can only point to precedents that shed a bright light to expose the infirmity of its arguments.

The Eleventh Circuit's opinion United States v. Brenton-Farley, 607 F.3d 1294 (11th Cir. 2010), upheld the Travel Act's 30-year mandatory punishment for a child sex offender who, during email communications over a police-sting "chat room" designed to ensnare such offenders, demonstrated time and again that child pornography was more than just a spectator sport for him. The defendant not only engaged in over 7 months of explicit solicitations made to a mother of a 10-year old child that he desired to have sex, in ménage-a-trois fashion, with both of them, but he also revealed that he had had continuous sexual relations with a 14-year old girl for over a year. Given those facts, it is hardly surprising that the circuit court found that a 30-year sentence for such a recidivist, dangerous defendant was not "grossly disproportionate."

Finally, the government, running out of precedential ammunition, resorts to a trio of summary order opinions, all of which expressly disavow any precedential value, to support its argument that the Travel Act's 30-year mandatory sentence "is not grossly disproportional to the crime." (G.M. at page 37). None of these cases has a real citation. Schumakov involved a defendant who travelled from Canada to Georgia with the intent to have incestual ménage-a-trois sexual relations with a mother and her 11-year old daughter. Neither Lyons nor Lamere are fact-specific as to the underlying criminal conduct committed by the defendants, both of whom committed their crimes on Native American reservations. But it is apparent that both were convicted of completed and repeated sexual abuses of minors that, although unclear from the bare-bones language in summary orders, likely involved the rapes and/or sodomy of their victims.

In any event, it is telling that the government, with its ample research capabilities, has managed to scrape together all of four written case opinions --1 completely distinguishable on its facts and the other 3 inapposite, poorly-descriptive and non-binding-- in which the 30-year mandatory punishment under the Travel Act was upheld. In one of those, the concurring opinion in Lamere observed that the defendant had no prior convictions for child abuse, and that "a thirty-year sentence on this record is yet another sad example of the cruel and unjust mandatory minimum sentencing scheme adopted by Congress." 337 Fed. Appx. 669 (9th Cir. 2009) (Tashima, C.J., concurring) citing, among others United States v. Hungerford, 465 F.3d 1113, 1118 (9th Cir. 2006).

In United States v. C.R., Docket No. 09 CR 155 (JBW) (EDNY filed September 26, 2013), after being reversed once again because he tried to implement what the late Mr. Justice Goldberg referred to as a "writ of rachmonis (mercy)", Judge Weinstein reluctantly concluded that the Second Circuit left him no option but to impose the 5-year mandatory minimum sentence on a young defendant convicted of distribution of child pornography while as adolescent which he amassed through an automatic file-showing computer program. Lamenting that "[t]his case exemplifies the sometimes unnecessary cruelty of our federal criminal law," Judge Weinstein pointed out that the "effect of harsh minimum cases such as C.R.'s is, effectively, to destroy young lives unnecessarily." Memorandum and Order at page 1.

Of course, the critical difference between the C.R. case and ours is that the defendant in the former faced no greater than a 5-year sentence, whereas Baslan faces a prison term six times as great. In United States v. Reingold, 731 F.2d 204 (2d Cir. 2013), in which the Second Circuit reversed Judge Weinstein's imposition of a 30-month sentence, the appellate panel pointed out that a 5-year sentence was not impermissibly disproportionate because the defendant not only

16

was extensively involved in the distribution of child pornography, but had also admitted having sex repeatedly with his 11-year-old sister when he was an 18-year-old adult. Id. At 230. The Court also found that the defendant's sexual interaction with his child sister "was disturbingly similar to the conduct depicted on the [child pornography] video that he had distributed." Id.

In imposing half of the mandatory minimum punishment prescribed by the child pornography distribution on the basis of the Eighth Amendment violation inherent in the mandatory sentence as applied to the defendant in that case, Judge Weinstein, in essence, was reversing his earlier decision to accept the defendant's plea allocution. Id. At 213, footnote 9. The Second Circuit, in effect, concluded that although Judge Weinstein was correct in accepting the defendant's plea under a mandatory-minimum 5-year5 statute, he was wrong in declining to impose that mandatory punishment.

Plainly, the differences between the "C.R." (or Reingold) case and Baslan's are of meaningful constitutional distinction. Not only is Solem properly applied to demonstrate, without question, the "gross disparity" between the Travel Act's 30-year mandatory punishment and Baslan's offense conduct, but every case on which the government relies in its opposition only fortifies that conclusion.

## **CONCLUSION**

For the reasons set forth herein and in Baslan's original memorandum in support of his post-trial motions, the Court should, most respectfully, grant the relief requested in his motions.

Dated: New York, New York
December 16, 2014

                                           Respectfully submitted,

                                   _____/S/_____

                                           Ephraim Savitt
                                           *Attorney for Defendant*
                                           *Bebars Baslan*
                                           260 Madison Avenue
                                           New York, NY 10016
                                           Phone (212) 679-4470
                                           Fax (212) 679-6770
                                           Email: Ephraim@Savittesq.com