LISA SCHMID, CCR, RMR  OFFICIAL COURT REPORTER

1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  ------------------------------------x
   UNITED STATES OF AMERICA,
3                                        13 CR 220(RJD)
            versus
4                                        U.S. Courthouse
   BEBARS BASLAN,                        225 Cadman Plaza East
5                                        Brooklyn, NY 11201
                      Defendant.
6  ------------------------------------x

7       TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING HEARING

8          BEFORE THE HONORABLE RAYMOND J. DEARIE

9             UNITED STATES DISTRICT JUDGE

10                       APPEARANCES

11 For the Government:    LORETTA LYNCH
                          UNITED STATES ATTORNEY
12                        EASTERN DISTRICT OF NEW YORK
                          271 Cadman Plaza East
13                        Brooklyn, New York 11201
                          BY: TYLER SMITH, ESQ.
14                        Assistant United States Attorney

15

16 For the Defendant:     EPHRAIM SAVITT, ESQ.
                          260 Madison Avenue
17                        22nd Floor
                          New York, New York 10016

18

19 Also present:          Leslie Lockwood, USPO

20

21 Court Reporter:        LISA SCHMID, CCR, RMR
                          Official Court Reporter
22                        225 Cadman Plaza East
                          Brooklyn, New York 11201
23                        Phone:  718-613-2644
                          Fax:  718-613-2379
24
   Proceedings recorded by mechanical stenography.  Transcript
25 produced by computer-aided transcription.

LISA SCHMID, CCR, RMR

```
 1              THE CLERK:  We're on this afternoon for a sentence.

 2    This is USA versus Bebars Baslan, Docket Number 13 Crim 220.

 3    Mr. Baslan is defendant number one.

 4              Can I ask the attorneys please to note their

 5    appearances, beginning with counsel for the government?

 6              MR. SMITH:  Tyler Smith for the United States, and

 7    with me at counsel table is Special Agent Aaron Spivack.  Good

 8    afternoon, Your Honor.

 9              MR. SAVITT:  Good afternoon, Your Honor.  Ephraim

10    Savitt for Mr. Baslan, who is standing right next to me, as

11    Your Honor sees.

12              THE DEFENDANT:  Good afternoon, Your Honor.

13              THE COURT:  You're ready to proceed, Mr. Savitt?

14              MR. SAVITT:  I believe so, Your Honor.

15              THE DEFENDANT:  (To Mr. Savitt) I need to talk to

16    you for a minute.

17              MR. SAVITT:  My client just asked if I could -- if

18    he could just have a minute to talk with me.

19              THE COURT:  One more accommodation to your client

20    wouldn't be out of the ordinary.  Go ahead.

21              MR. SAVITT:  Thank you, your Honor.  May we?  Oh,

22    I'm sorry.

23              THE COURT:  And don't waste your minute.

24              MR. SAVITT:  (Confers with the defendant.)

25              THE COURT:  Did Ms. Leslie -- did you have an
```

1    appearance -- do we have your appearance on the record?

2              MS. LOCKWOOD:  No.

3              THE COURT:  You're going to take care of that?

4              MS. LOCKWOOD:  Leslie Lockwood from the Probation

5    Department.

6              (Pause in proceedings.)

7              THE COURT:  Ready to proceed, Mr. Savitt?

8              MR. SAVITT:  We are now, Your Honor.

9              THE COURT:  All right.  Mister -- hold on just a

10   second.  You're going to say something about this?

11             MR. SMITH:  Yes, Your Honor.  In preparing for

12   today's proceeding, we noticed a mistake that we believe

13   exists in the transcript relating to a comment of the Court,

14   actually, during the testimony of the witness, Courtney, which

15   occurs on the last page of what I've just handed up.

16             THE COURT:  I have no idea what it was in reference

17   to, but I know I didn't say it.

18             MR. SAVITT:  The buzz thing, yeah.

19             MR. SMITH:  Right.  As it reads, it says, "I don't

20   know if she's getting her buzz on or hurting herself."  I

21   believe that what the Court actually said was, "I don't know

22   if she's helping herself or hurting herself."

23             MR. SAVITT:  That would sound a lot like more like

24   you, Your Honor, than the former.

25             THE COURT:  I appreciate that.  So we'll note that

```
 1   correction for the record, page 444 of the trial record, at

 2   the conclusion, I would say of the direct testimony of the

 3   witness, Courtney.

 4           Okay.  Thank you for pointing that out.  I would

 5   have had a heart attack if I had came across it myself.

 6           Mr. Baslan, before we go any further, let me just

 7   remind you that with respect to your conviction, the jury has

 8   found you guilty with respect to four of the five counts.  You

 9   have an absolute right to appeal your conviction to a higher

10   court.  Assuming your continuing eligibility, if you are

11   interested in that regard, I believe counsel fees will be paid

12   by the court under the authority of the Criminal Justice Act.

13   Do you understand that, sir?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  This is what -- it would be my

16   impression that you intend to file a notice on your client's

17   behalf?

18           MR. SAVITT:  I will file a notice on my client's

19   behalf, and we've discussed representation before the

20   appellate court.  I know that he wants another counsel.  So I

21   will make a motion to the Second Circuit with his consent to

22   that end.

23           THE COURT:  I leave that up to you and your

24   colleagues in the Second Circuit.

25           MR. SAVITT:  Yes, sir.
```

```
 1            THE COURT:  All right.  Technically, we begin, of

 2   course, with the report itself.  Before we get to the

 3   Guidelines calculation, there are a couple of issues that the

 4   defense took exception to, which the government acknowledged

 5   it may be meaning the reference to marriage fraud in paragraph

 6   58, which will come out.  And there is also a reference to the

 7   allegation in paragraph 64 that he stole $18,000 from Albina

 8   W. Duvis?

 9            MR. SAVITT:  Duvis.

10            THE COURT:  The government has no objection to

11   removing paragraph 64.

12            So as far as the Guidelines calculation, I don't

13   know how compelling the analysis is for purposes of today, but

14   we are instructed to begin there, so we'll begin there.

15            There have been a couple of exceptions voiced by

16   Mr. Savitt to the calculation.  I think Probation got it

17   right, and absent the need to have any extended discussion

18   about it, I'll leave it at that and we can move on.

19            Mr. Savitt?

20            MR. SAVITT:  Yes, Your Honor.  This subject -- this

21   case has been the subject of a lot of sentencing-related

22   submissions on both sides.  I know that Your Honor has been

23   inundated with various submissions.

24            THE COURT:  As recently as this morning.

25            MR. SAVITT:  Yes, Your Honor.  And I concede that
```

1   this submission was made by me twice, actually -- once this

2   morning, once this early afternoon.

3           And the one thing that I wanted to make sure is that

4   the record contains not only the submissions by the attorneys

5   in this case, but also Mr. Baslan's pro se submissions in

6   their entirety. Now, I believe that Your Honor has seen all of

7   them at this point. I just want to make sure that they're

8   filed.

9           THE COURT:  The only one that I'll take

10  responsibility of filing is the rather thick one I received

11  earlier this week, his pro se filing.

12          MR. SAVITT:  Yes, Your Honor.

13          THE COURT:  I'll see to it that that's docketed with

14  the Clerk of the Court.

15          MR. SAVITT:  Well, my client has not changed any of

16  the substantive aspect of that submission, but in his efforts

17  to be as careful as possible, he noticed that there were a lot

18  of misspellings and he corrected the misspellings and he

19  wanted to make sure that the corrected version is filed.  I

20  know Your Honor has read the previous.

21          I took it upon myself not to file at the last moment

22  the corrected version, because I know that Your Honor is on

23  trial and I know that there are no substantive differences and

24  I didn't want to confuse the situation.

25          THE COURT:  If his concern is about filing a cleaner

```
 1   copy of the same submission --

 2              MR. SAVITT:  Yes, Your Honor.

 3              THE COURT:  -- I have no quarrel with that, provided

 4   I have his assurance that it is just that, a version from

 5   which misspellings or typos have been removed, with no

 6   additional substantive additions.

 7              THE DEFENDANT:  Yes, Your Honor.  Just a couple of

 8   embarrassing misspellings, where instead of "makeshift," it's

 9   something else that sounds the same, but a couple of things

10   like that.

11              THE COURT:  Where is that document?

12              THE DEFENDANT:  I put everything together here.

13              THE COURT:  Ellie, would you be good enough?

14              THE CLERK:  Certainly.  (Complies.)

15              THE DEFENDANT:  This overrides --

16              THE COURT:  I don't need that now.

17              THE CLERK:  Okay.

18              THE COURT:  I've got copies of it here.

19              MR. SAVITT:  It also includes the sentencing letter

20   that I filed with my cover letter to the Court by Mr. Baslan.

21              THE COURT:  I have that, too.

22              MR. SAVITT:  Yes.  And I believe it's the same, but

23   in the interest of just caution, we have submitted another

24   copy, Your Honor --

25              THE COURT:  Well --
```

```
 1              MR. SAVITT:  -- along with the memorandum.

 2              THE COURT:  -- fair enough.  Well, obviously, we

 3    find ourselves in very difficult circumstance here, but with

 4    preliminary matters aside, I will turn it over to you,

 5    Mr. Savitt.

 6              MR. SAVITT:  Yes, Your Honor.  Your Honor, I

 7    apologize.  My client has another submission that Your Honor

 8    has not read, and that does not impact on the sentencing

 9    proceeding whatsoever.

10              He wants to preserve an argument regarding

11    ineffective assistance of counsel, and I'm hard-pressed, not

12    having read it or since I'm the subject of that particular

13    submission, to take any position that would necessarily agree

14    with one or the other.  What he asked me to do is ask the

15    Court's permission to file this ECF, so that it's part of the

16    record on appeal, as well.

17              THE COURT:  I find it --

18              MR. SAVITT:  I haven't read it, Your Honor.

19              THE COURT:  -- curious.  It's generally something

20    that's handled collaterally --

21              MR. SAVITT:  Yes, a 2255.

22              THE COURT:  -- sometimes with new counsel, they

23    appear.  Their understandable desire is to have a full record.

24    So whether he files before me or doesn't file before me isn't

25    going to affect anything.  But he's at liberty to tender
```

```
1   whatever he wants to here in the district court.  Once I've

2   signed the judgment, the case is beyond -- past me.  So I'll

3   leave it at that.

4           THE DEFENDANT:  Would it be filed now or before the

5   judgment?

6           THE COURT:  (To Mr. Savitt) It's only -- we knew,

7   you know, let's be honest.  Sooner or later, you were going to

8   be the target and indeed you are for the time being, as we

9   went through the history of this case from time to time.

10          MR. SAVITT:  Yes, Your Honor.

11          THE COURT:  You would be targeted.

12          MR. SAVITT:  Yes, Your Honor.

13          THE COURT:  The decision to aim at you and then not

14  aim at you and so forth, we have been through that.  There's

15  no reason to repeat it.  It's inevitable you'll be the target

16  again, as will a whole bunch of us.  That's fine.

17          MR. SAVITT:  Right, Your Honor.  Well, the

18  transcript of these proceedings are certainly going to be part

19  of the appellate record, and Mr. Baslan has in his hands a

20  document with a number of exhibits that perhaps if -- I know

21  that he wants to have it filed now.

22          I would caution that perhaps he should discuss that

23  with appellate counsel at some future point and see whether or

24  not it might make more sense for him to file it at that point.

25  To the extent that he's concerned about waiving any arguments,
```

LISA SCHMID, CCR, RMR

1    I don't believe he's waiving any arguments.  He's already made

2    certain submissions and statements on the record where, as

3    Your Honor put it, I was the target.  And I understand his

4    position.  I don't necessarily agree with it, obviously, but I

5    do understand.

6            THE COURT:  What does he want to do?  He wants to

7    file it here?

8            MR. SAVITT:  Yes, Your Honor.

9            THE COURT:  Ellie?

10           THE CLERK:  Yes, sir?

11           THE COURT:  Take the document.

12           THE CLERK:  (Complies.)

13           THE COURT:  I think your suggestion is the better

14   one.  He would be well-advised to confer with appellate

15   counsel before he does anything to further any claim he may

16   press either on appeal or on collateral attacks, but that's

17   his decision to make and it will be shown that he's willing

18   and anxious to make his own decisions.

19           Okay.  Let's get down to the heart of the matter,

20   which is a more difficult question.  We're dealing with an

21   ominous thirty-year mandatory minimum sentence.  I'm going to

22   cut through it all.  The question really is, given what's

23   before me, given this trial record, given the proof that was

24   adduced, what if anything do I do beyond that?

25           The government has pressed for a substantial

```
1    sentence in accordance with the recommendation of Probation

2    beyond the thirty-year limit.  So the question is where within

3    that range of 30 to 45 years or for that matter, life

4    imprisonment this Court should find as a judgment.

5             And with that, I'll turn it over to you.

6             MR. SAVITT:  Well, Mr. Baslan will certainly have an

7    opportunity, I want to assure him, to address the Court.

8             THE COURT:  Of course.

9             MR. SAVITT:  I've made Mr. Baslan's position as well

10   as my own.  They're the same, as far as this question is

11   concerned, Your Honor.

12            Now that our post-trial motions have been denied by

13   the Court that we've argued against an imposition of a

14   thirty-year sentence based on Eighth Amendment grounds, and

15   all that's preserved for the record.

16            So now we're at a position whether or not it should

17   be 30 years or more, and our position, quite obviously, would

18   be that 30 years is more than enough in this case, given the

19   fact that Mr. Baslan has literally no prior history of any

20   criminality -- and putting the Buffalo allegations aside just

21   for a moment --

22            THE COURT:  The what allegations?

23            MR. SAVITT:  The Buffalo, New York --

24            THE COURT:  Oh, that's preserved.

25            MR. SAVITT:  -- those women.
```

LISA SCHMID, CCR, RMR

1           THE COURT:  I don't know why there is such a focus

2    of such attention in that regard in the sentencing.  I can

3    tell you right off the bat, they've got nothing to do with my

4    judgment here.

5           MR. SAVITT:  Excellent.

6           THE COURT:  It's ancient history.  I heard the

7    testimony of the woman who testified here.  She addressed a

8    very minor point in the presentation of the defense, this

9    so-called "journalism defense."  As far as I'm concerned, it's

10   got nothing to do with today's proceeding.

11          MR. SAVITT:  Thank you, Your Honor.  In that case,

12   Your Honor -- Your Honor is certainly as familiar with the

13   proof in this case as the rest of us are.

14          And what happened in this case, of course, is not

15   something that I could argue should lead to any mitigation.

16   But by the same token, it's not just the question that nothing

17   happened.  I understand, having been before this Court and

18   many other courts that an attempt is equal in certain cases

19   such as this one to a completed act.

20          But if we look at his background, he's never done

21   anything like this before.  The U. S. Attorney and the FBI,

22   I'm sure, conducted -- I have no question about it, knowing

23   the caliber of the people involved in this case -- conducted a

24   very exhaustive and extensive examination of Mr. Baslan's

25   past, and there were certain things that were included in the

1   pre-sentence report, some of which, with the government's

2   consent, were just stricken by Your Honor.  And there were

3   these Buffalo allegations, which Your Honor is not

4   considering.

5           So given the record in this case, to sentence

6   Mr. Baslan to more than 30 years really is an extremely

7   disproportionate punishment for the offender and frankly, for

8   the offense itself, which is a horrible offense.  Your Honor,

9   I can understand that.  But by the same token, 30 years is a

10  massive sentence.  Forty-five years is twice the mandatory

11  minimum murder sentence in New York state.

12          In another case -- and I can compare the two cases,

13  where another client of mine was sentenced by Your Honor.  He

14  also faced life in jail.  He shot a woman who was pregnant and

15  I believe he did so accidentally, but it was felony murder and

16  the statute permitted a number of years to be imposed as

17  opposed to life, and he certainly didn't get anything close to

18  45 years -- and he killed somebody and he kept on robbing

19  people and, you know, I felt for him.  But those are terrible

20  crimes.

21          Mr. Baslan's crime, although unforgivable in a real

22  sense, nevertheless was a crime that occurred without any

23  precedent in his past.  And frankly, we're not all together

24  clear whether or not if, indeed, this were not a sting

25  operation, exactly what would have transpired or what the

1    future would have held.  I'm not sure about that.

2            But certainly, the past is clearly something that

3    speaks in Mr. Baslan's favor here, and I am reliant upon the

4    Government's investigation where they came up with nothing, in

5    fact, that was even remotely similar to the conduct --

6    the offense conduct in this case.  I'm sure they would have if

7    it existed.  But -- because I know their investigation was

8    thorough.  I mean, they went all the way up to Buffalo and all

9    around.  This was a multi-year investigation, and I credit

10   them with conducting a very good investigation.

11           So given all these factors, Your Honor, 30 years is

12   more than enough in this case, and I beseech Your Honor not to

13   impose a sentence that is in excess of the mandatory minimum

14   as required by the Travel Act Statute.

15           THE COURT:  Sir?

16           MR. SMITH:  Your Honor, since the moment that

17   Mr. Baslan was arrested, he has attempted to evade

18   responsibility for his actions.  On the night of his arrest,

19   he offered to go to Russia if they would just let him go.

20   After that, he offered to find child pornographers for the

21   Government if we would make some deal with him.

22           Almost immediately after arrest, he began engaging

23   in a widespread attempt to obstruct justice that involved not

24   just himself, but other people, a willingness to commit a

25   fraud on the Court, and then he testified falsely at trial,

1    and he's continued making false representations to the Court

2    until literally today, when he submitted the last submission

3    in connection with sentencing.

4            Some of these are obvious clear lies, like his

5    continuing indication that he never viewed the child

6    pornography he watched with the government's informant until

7    the day that he viewed it, despite various statements that

8    made clear that was false.

9            And I just want to respond briefly to his latest

10   submission because the government hasn't had any opportunity

11   to put in a submission in writing to that.  The defendant

12   makes much of whether or not he's a pedophile, but ultimately,

13   that's not an issue in the case.

14           What matters here is his conduct, and the evidence

15   in the case is that on March 18th, in a recording March 18th

16   before his arrest, he indicated that wanted to commit the

17   offense because it was taboo and that's the reason that it

18   would be interesting.

19           It's clear that he amassed one of the largest

20   collections of child pornography that the New York Field

21   Division of the FBI has seen.  It's clear that he intended to

22   create his own child pornography and that he certainly had the

23   technical skills to distribute child pornography, if that was

24   something he was going to do in the future.  It's simply

25   immaterial whether or not he meets the definition of

```
 1   pedophile.  What's at issue is his conduct, the conduct of

 2   trying to sexually abuse children and the fact that he lied

 3   and lied and lied and lied afterwards, to avoid

 4   responsibility.

 5            I want to note that the defendant indicates that the

 6   Government has fully decrypted the computers that he had.

 7   That's not correct.  We have not fully decrypted his

 8   computers.  As he indicated in tape recordings made by the

 9   government's CI in prison, he identified that there were

10   things on the computers that wouldn't even appear to be

11   encrypted to the government.  We've also identified locked

12   containers that have never been decrypted.

13            And I think it's notable that throughout his own

14   submission, in his own statements, the one thing he doesn't

15   mention are the hours and hours of recordings that were made

16   of him talking about sexually abusing children.  The Court is

17   certainly aware of them.  We played them here at length.  They

18   were discussed at length.

19            And on all of those recordings, what's heard is

20   Baslan, not the government's CI, directing the scheme to abuse

21   children, Baslan talking at length about how to molest

22   children, how to do it both physically, what sexual acts you

23   can commit on a child, how to do it emotionally, how you would

24   encourage a child to be willing to engage in sexual acts with

25   an adult.
```

LISA SCHMID, CCR, RMR

1          And his latest submission continues his lies.  He

2     again indicates that this was a plan to entrap the

3     government's CI, who he describes as a monster who was

4     molesting children.  He would have had the jury believe and

5     the Court believe that he was merely playing along with what

6     the government CI was trying to do.

7          And during this, part of that playing along was the

8     defendant telling the CI how to molest his own daughter,

9     providing the CI with Benadryl and instructions on how to

10    incapacitate a seven-year-old, who in the defendant's latest

11    submission, the defendant claims the CI to have been

12    interested in sexually abusing.  These claims should hold no

13    more -- and they were rightly rejected by the jury because

14    they continued to be ridiculous.  They continued to be a

15    scheme, both to attempt to pervert justice and to accept no

16    responsibility for his actions.

17         And ultimately, the mandatory minimum sentence for

18    the act of traveling across state lines to abuse a child under

19    12 is 30 years.  The defendant is not similarly situated to

20    someone who's committed only that crime and then accepted

21    responsibility, someone who's committed that crime and

22    admitted that they have a problem, who has accepted that they

23    need help.

24         The defendant should be punished more severely

25    because he had no qualms about lying after he committed that

1    crime.  He had no qualms about engaging other people to help

2    him lie, about falsely accusing the government of destroying

3    his culpatory evidence, about submitting false statements to

4    the Court, about testifying falsely, and even beyond the

5    things that were at issue at trial, his conduct in this case,

6    which is heinous, the things that he described in detail about

7    molesting children.

8            The Government believes that the Court should send a

9    message to other defendants and to this defendant, that this

10   conduct of attempting to obstruct justice will not stand, and

11   that he should be punished more severely not just as to an

12   indication that his underlying crimes are heinous, but also

13   because since then, he's done nothing but attempt to

14   manipulate and lie.

15           And it's for that reason that the Government

16   believes that Probation was correct to recommend a sentence of

17   45 years, which is still less than the Guidelines range of

18   life, which applies in this case.  And the Government asks

19   that that sentence be imposed and be imposed in the manner

20   that the Government requested in its sentencing memorandum.

21   Thank you, Your Honor.

22           THE COURT:  Mr. Smith, thank you.

23           Mr. Baslan?

24           THE DEFENDANT:  If I may, Your Honor, I would just

25   want to correct a few things.  I'm not doing it out of luck,

1    remorse or anything.  I just want an abstract conversation or

2    discussion about what I just heard.

3           Obviously, this came in last minute and I didn't

4    have a chance to hear the government's response or respond

5    back to it.

6           THE COURT:  You are the last person in the world who

7    should be worried about complaining about last minute

8    submissions, but go ahead.

9           THE DEFENDANT:  Your Honor, I would have loved to

10   even do them beforehand.  I wrote a letter to Mr. Savitt

11   today, telling him that in MDC since post-trial, we get one

12   hour a week to go to law library, maybe one-and-a-half hours.

13   Then within that time, we have to make photocopies and

14   everything else.

15          When we come to the unit, we're allowed to log in on

16   the computer for one hour to write and one hour to log off.

17   That's not including countdowns and so on.  So -- and I even

18   brought to the Court a list of all my login minutes for the

19   past couple of months to show him that I've used every single

20   hour of the day possible.  It's not about slacking.

21          I mean, I wish I had help doing the submission, but

22   I didn't.  We had not spoken since -- well, actually we did

23   not meet, minus the 15 minute meeting and a 30 minute meeting

24   before the sentencing with Mr. Savitt since my trial had taken

25   place.  I'm not making blame.  It's just the fact of what had

1    happened.

2            THE COURT:  I beg your pardon?  Say that again?

3            THE DEFENDANT:  I have not seen Mr. Savitt for more

4    than one 15 minute and a 30 or 40 minute meeting since trial.

5    That's a fact.  It's not a blame.  I'm not saying anything.

6    I'm -- just it happened that way.

7            And the reason why I decided to continue -- and I

8    submitted some emails to Your Honor -- that I got a promise

9    from Mr. Savitt that we will, you know, work together on

10   issues.  The issues for me -- I don't even know if what I did

11   was good for me or not good for me.

12           I felt -- again, not a blame -- Mr. Savitt had much

13   health issues that I'm not, you know, saying that's in his

14   control.  I did feel abandoned, as far as I have a lot of

15   issues and points that I wanted him to sit down with me and

16   discuss them, which did not happen.  Even the submissions,

17   I've not seen or reviewed any of the submissions minus the

18   first one, but not with Mr. Savitt.

19           And from what I heard right now with Mister -- from

20   AUSA Smith, he brings out a lot of points which avoid any of

21   the points that are brought up in my submission.  I tried in

22   my submissions to be factual, to present evidence to

23   everything I said.  I tried to be respectful.  I did not at

24   all assert remorse or no remorse or defense or no defense.

25   I'm trying to turn a new leaf, and I was very sincere about my

1    submission.

2            That's it.  I mean, I guess, you know, I'm not

3    qualified to be able to argue with a formidable person like

4    Mr. Smith.  So I just put myself on the mercy of this Court

5    and I, again, I feel very bad and I sincerely tried.

6            I've been pushing Mr. Savitt and Ms. Stafford to try

7    to make a deal to waive appeal rights if that would benefit

8    Kristen, and that was a very sincere offer and sincere effort,

9    and my message -- the two letters that I wrote to Your Honor

10   do, in all honesty, reflect how I feel, the conclusion nine

11   and the sentencing letter submitted today.

12           THE COURT:  Well, I don't know where to start.  I'll

13   keep it simple.

14           I hope that those responsible parties who in the

15   future will -- I'm confident that will review the trial

16   record.  In all these submissions that I've read and now

17   having read and reread, it's almost as if we didn't have a

18   trial.  It's almost as if we had no testimony.  It's almost as

19   if there were no tapes.  There were no discussions.  That's

20   where my focus is today.

21           I'm not concerned about Buffalo.  I'm not even

22   concerned about Jack, who was essentially destroyed without

23   making an appearance.  But there's one thing we can say about

24   Jack.  But for Jack, we wouldn't be here today.  You'd be out

25   free, doing God knows what.  So say what you want about Jack.

```
 1   This isn't about Jack.  It's about the trial record.  It's
 2   about those tape recordings.  It's about the demonstrated lies
 3   that you can derive from those recordings, and this absurd
 4   defense that you presented that the jury readily rejected.
 5   And you're going to continue to point fingers at MDC and the
 6   U. S. Attorney and no doubt, Mr. Savitt, Courtney, Jack and
 7   everybody else.
 8          I'm not concerned about it.  I'm not here to decide
 9   if you're a pedophile or an archangel.  I sentence you on the
10   basis of your conduct, very straight forward.  I don't have
11   the authority, the power -- nor should I -- to judge you as a
12   man.  I judge you based upon what you have done and by what
13   you attempted to do.  Period.  End of discussion.
14          And the evidence on that score is compelling.
15   Frankly, revolting.  You know, I take no great pleasure in
16   sentencing anybody.  I particularly take very little pleasure
17   in imposing lengthy sentences, be they mandatorily-imposed or
18   not.  Too many of them, I take home with me and I can't get
19   rid of them.  But not this one.  Not this one.
20          Say what you like.  Out of all these other enemies
21   that you've defined, I am concerned about your conduct,
22   reprehensible conduct -- conduct that keeps punishing these
23   victims every day.  The murder victim rests in peace.  These
24   victims never have that opportunity.  You've got to stop and
25   think about that.  So it's not your charm.  It's not your
```

1    sense of being a victim.  It's just about the evidence.

2            No matter what I do, frankly, no matter how

3    aggressive the Government or the FBI is, right?  We can't do

4    anything about the impact of this type of criminal activity on

5    the victims.  We just can't.  We're powerless.  We can try to

6    deter it, as they do appropriately.

7            So it's very unsatisfying.  But you're one of the

8    few folks that I've come cross, with due respect,

9    Mr. Baslan -- and I hope it changes -- that has to be put

10    away.  And in my way of thinking, there are not that many who

11    do, certainly not for this length of time.  But we have to

12    protect others from folks like you.  Those are harsh words.

13    The evidence in this case leaves me no other way to

14    characterize it.  There's very little to say.

15            I'm going to impose sentence as follows:  On your

16    plea of guilty to Count 5, I'll impose a sentence of 20 years

17    imprisonment.  Special assessment on all counts, totaling

18    $500, lifetime supervised release.

19            On your -- the jury having found you guilty on

20    Counts 1, 2, 3 and 4, I sentence you as follows:  On Count 1,

21    36 years imprisonment; on Count 2, 30 years imprisonment; on

22    Count 3, 30 years imprisonment; on Count 4, 30 years

23    imprisonment, those sentences to run concurrently.  There will

24    be no fine.

25            With respect to the issue of restitution, I'll enter

1    an extended order.  I find restitution to Jenny in the amount

2    of $25,000; restitution to Angela in the amount of $16,000.

3    As I said, the subsequent order will issue with respect to my

4    specific findings relative to the submissions made on their

5    behalf.

6              Special assessments, I have already announced.  Is

7    there anything else?

8              MR. SAVITT:  Just for my clarity, perhaps the --

9    Your Honor, the Count 5, the 20 years is imposed concurrently

10   to --

11             THE COURT:  All sentences concurrent.

12             MR. SAVITT:  All sentences concurrent?

13             THE COURT:  Right.

14             Now, special conditions of your supervised release:

15   You'll participate in mental health treatment, which may

16   involve the treatment for sexual disorders.  In terms of what

17   you do in prison, as I understand it, Mr. Baslan, that's up to

18   you.  That will tell us something.

19             Did I not say Angela?  Did I not name Angela?

20             MR. SMITH:  I believe you said $16,000 for Angela.

21             THE COURT:  Jenny and Angela.  The first one -- the

22   higher amount for Jenny and the second amount for Angela.

23             MR. SAVITT:  (Nods head affirmatively.)

24             THE COURT:  Mental health treatment.

25             I don't want any contact whatsoever with, obviously,

1    any of the victims.  That goes without saying -- anyone under

2    the age of 18, unless a responsible adult is present.  If you

3    cohabit with anyone who has minor children, you're to give

4    full notice to that person about your criminal history.

5              You'll submit your property, your residence, papers,

6    vehicles, computers to search and will notify anybody with

7    whom you live of that condition.

8              These specific conditions are, as you know,

9    specifically delineated in the Probation Department's

10   recommended sentence:  Not to use a computer to access

11   pornography of any kind and you'll submit your computer for

12   forensic search and monitoring as directed by the Court.

13             Is there anything else?

14             MR. SMITH:  Did Your Honor -- I don't know that you

15   have indicated sex offender registration, which would be

16   mandatory.  It's in the Probation report.

17             THE COURT:  As required by law, I'll make it a

18   condition of supervised release.  It's required independently

19   by law, sex offender registration in any jurisdiction wherein

20   you reside.

21             MR. SAVITT:  Would Your Honor consider recommending

22   designation to the Otisville facility, where I understand

23   there is a --

24             THE DEFENDANT:  Sex offender.

25             MR. SAVITT:  A sex offender treatment.  There may be

1    --

2         MS. LOCKWOOD:  No, I don't think.

3         THE COURT:  Not to my knowledge.

4         MS. LOCKWOOD:  There may be a group.  Devens is a

5    more comprehensive program, and he will be considered for such

6    a program probably as it gets closer to his release.  But

7    anywhere he's designated, they should have at the very least a

8    group or some type of treatment he can attend.

9         THE COURT:  I'm going to leave that matter to the

10   officials --

11        MS. LOCKWOOD:  Yes, please.

12        THE COURT:  -- of the Bureau of Prisons in

13   consultation with the Court and the Department of Probation.

14        Anything else?

15        MR. SAVITT:  Yes, Your Honor.  May we have a copy

16   pursuant to CJA of these proceedings?  And I'll forward them

17   to Mr. Baslan together with the Notice of Appeal that I will

18   file for him.

19        THE COURT:  Of course.

20        Mr. Smith, anything else?

21        MR. SMITH:  One second, Your Honor. (Consults with

22   Ms. Lockwood.)

23        Your Honor, the Court has obviously imposed its

24   sentence, but the Government would ask that you impose 36

25   years instead of 30 on Count 4, running concurrently to the

LISA SCHMID, CCR, RMR

```
 1   other counts.

 2              THE COURT:  What did I do?  Did I misspeak?

 3              MR. SMITH:  You imposed 30, Your Honor.  You imposed

 4   36 years on Count 1.

 5              THE COURT:  Right.

 6              MR. SMITH:  And 30 on the remaining counts.  Count 4

 7   also carries a maximum sentence of life.  The Government would

 8   ask that you impose 36 years on that count.

 9              THE COURT:  I did misspeak.  Let's review it.  Count

10   1, 36 years; Count 2, 30 years; Count 3, 30 years; Count 4, 36

11   years; Count 5, 20 years.

12              Thanks for bringing that to my attention.

13              MR. SMITH:  All to be run concurrently?

14              THE COURT:  All to run concurrently.

15              Anything else?

16              MR. SMITH:  Nothing from the government.

17              MR. SAVITT:  I don't believe.  Nothing from the

18   defense.  Thank you, Your Honor.

19              THE COURT:  Good day.

20              (Proceedings concluded.)

21

22

23

24

25
```

LISA SCHMID, CCR, RMR