1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,           )
                Plaintiff,           )   13cr00220 (RJD)
                            )
                            )
V.                                  )   United States Courthouse
                            )   Brooklyn, New York
                            )
BEBARS BASLAN,                      )   JULY 10, 2014
                            )
              Defendant.           )
_____)

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE RAYMOND J. DEARIE
UNITED STATES SENIOR DISTRICT JUDGE

<u>APPEARANCES</u>:
FOR THE GOVERNMENT:   KELLY T. CURRIE
                      United States Attorney
                      BY:  TYLER JOSEPH SMITH
                      BY:  TIANA A. DEMAS
                      Assistant United States Attorneys
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201

FOR THE DEFENDANT:    EPHRAIM SAVITT
                      Attorney At Law
                      260 Madison Avenue, 22nd Floor
                      New York, New York 10016

THE COURT REPORTER:   NICOLE CANALES, RPR, CSR
                      225 Cadman Plaza East
                      Brooklyn, New York 11201
                      cnlsnic@aol.com

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

2

1          THE CLERK:  United States versus Baslan, 13CR220.

2    Counsel, please state your appearances.

3          MR. SMITH:  Tyler Smith and Tiana Demas for the

4    United States.  Good morning, your Honor.

5          THE COURT:  Good morning.

6          MS. DEMAS:  Good morning, Judge.

7          MR. SAVITT:  Ephraim Savitt for Bebars Baslan.  And

8    also at counsel table is Tamera Patskerez (phonetic), my

9    paralegal.  Good morning, your Honor.

10         THE COURT:  Good morning.

11         Good morning, Mr. Baslan.

12         THE DEFENDANT:  Good morning.

13         THE COURT:  We've convene today principally to

14   address an application by Mr. Savitt, to either preclude the

15   admission of certain evidence, or, in the alternative, to

16   grant him an extended adjournment of the trial, given his

17   trial schedule, he advises us, will take us well into 2015.

18   Ms. Mulqueen, I believe, informed you, having reviewed these

19   papers, my inclination is to proceed with the trial.  But I

20   thought it appropriate that we give everyone an opportunity to

21   be heard.  And I have a couple of questions I'd like to put,

22   before I finally rule, to the government with respect to

23   witnesses or prospective witnesses that are identified as

24   victim one and victim two.

25         I believe in your letter to the Court, you advised

3

1   that you became aware of their existence approximately a year

2   ago?

3           MR. SMITH:  More than that.  In -- shortly after the

4   defendant's arrest in March 2013.

5           THE COURT:  And how did that come about, if I may

6   ask?

7           MR. SMITH:  One of the victims contacted the FBI.

8           THE COURT:  I see.

9           MR. SMITH:  And we subsequently found the other

10  victim as a result of that contact.

11          THE COURT:  How much material is there to turn over?

12  And I take it by now you've turned it over?

13          MR. SMITH:  With respect to the victim statements, I

14  don't know what the actual page count was.

15          THE COURT:  Roughly?

16          MR. SMITH:  Forty pages, at most.  Probably less

17  than that, your Honor.

18          THE COURT:  And you've gleaned your file, carefully

19  identifying any Giglio material with respect to these

20  witnesses?

21          MR. SMITH:  We'll disclose additional Giglio today.

22  I think that all the Giglio disclosures that we would make are

23  also contained in the witness statements; that's the method by

24  which we learned about any Giglio material, but we'll also

25  separate it for counsel, so that he can be sure as to what we

4

1   believe constitutes essential Giglio, at the very least.

2           THE COURT:  At the time of these incidents, was

3   there any complaint filed with the authorities?

4           MR. SMITH:  No.

5           THE COURT:  Well, you know, putting these legal

6   discussions, 413, 414, 404(b), for that matter, to the side

7   for the moment, it's hard to imagine -- and it's almost

8   implicit, Mr. Savitt, in your application for adjournment.

9   It's hard to imagine that this information wouldn't be

10  admitted, not withstanding, with 403 analysis, which, I agree,

11  is critical, because it has potentially significant impact on

12  the defense.  It's just hard to imagine, as a matter of common

13  sense.

14          I'll rule, finally, on Rule 413 and 414, because,

15  much to my surprise, never having dealt with these issues in

16  the past, there's a lot of case law out there, most of it

17  favoring the government's position, but I haven't reviewed it

18  all.  I'm going to do that.  But I'm saying, now, the

19  overwhelming likelihood is that this is going to come in.

20  Indeed, it's probably a classic example of 404(b), far more

21  compelling than most 404(b) presentations I get from the

22  government in routine cases, but you don't have to agree with

23  that.

24          You also state in your letter that it's apparent

25  that from the tapes, the jailhouse tapes, that the defense was

5

1   aware of either these incidents or matters similar to these

2   incidents.  Could you elaborate on that?

3            MR. SMITH:  It's not actually from the jailhouse

4   tapes.  The jailhouse informant also informed the government

5   that Mr. Baslan had talked to him about the fact that there

6   were minors who he had -- I believe the quote from the

7   jailhouse informant was that he had gotten away with sexually

8   assaulting minors in the Buffalo area.  And in defense

9   counsel's letter, they reference the fact that Mr. Baslan had

10  indicated that to the jailhouse informant.  So it certainly

11  isn't a surprise to him that these victims exist and that

12  at least claim to be sexually assaulted by him.  In addition,

13  I'll just note that contact information for both victims is in

14  his phone.  He searched for one by name on Google, on

15  March 9th, 2013, ten days before he was arrested in this case.

16           THE COURT:  Well, with respect to victim one, that

17  was apparently a longstanding -- according to your

18  information, a longstanding relationship, relatively long

19  standing.  These weren't isolated incidents.

20           MR. SMITH:  They certainly weren't isolated

21  incidents.  As to either victim, there was a relationship.

22  This wasn't -- they didn't get dragged into a van off the

23  street.

24           THE COURT:  It's hard to imagine that this comes as

25  a great surprise to the defense.  Indeed, Mr. Cariddi, one of

6

1    the former lawyers, in one of the letters, I recall, made

2    inquiries or at least made comments about tapes that might be

3    available depicting adult-heterosexual sex, and his concern

4    that they not be -- I guess his preliminary concern is that he

5    know exactly what the government had.  And knowing Mr. Savitt

6    and his skill, the availability of 413 and 414, in these

7    cases, it's hard to imagine the defense is sandbagged by this,

8    but I'm happy to listen.

9         MR. SAVITT:  Well, your Honor, I have to confess

10   that -- first of all, I appreciate your allusion to my skill,

11   such as it is, but I did feel sandbagged when I saw this

12   stuff.  I don't know what Mr. Cariddi was referring to.

13   There's another sex tape on Mr. Baslan's phone, which involves

14   the codefendant Kristen Henry.  I did not have any notice,

15   personally, until the 27th that there would be evidence ten

16   years old, involving two woman up in Buffalo, complete with

17   threats of blackmail, extortion, until literally the two-week

18   period that 413 allows the government to turn over the

19   evidence.  So they've complied with 413's notice requirement.

20        THE COURT:  You choose your words very carefully, as

21   I would expect you to.  You felt you were sandbagged, or

22   whatever it was.

23        MR. SAVITT:  Surprised, actually.

24        THE COURT:  You felt surprised by what?  The

25   government's late disclosure or by the fact that these

7

1    incidents occurred, allegedly?

2           MR. SAVITT:  By the fact that these incidents

3    occurred, although --

4           THE COURT:  I would imagine, given the information

5    in the record.

6           MR. SAVITT:  Well, there's nothing in the discovery

7    to date that had anything to do with this information.

8           THE COURT:  I understand that.

9           MR. SAVITT:  I understand that the government

10   assumes that I'm going to get all the information from the

11   best source possible; that's not always the case, your Honor.

12          THE COURT:  Doesn't relieve the government of their

13   obligation, either.

14          MR. SAVITT:  Correct.

15          THE COURT:  That's not what I'm getting at.  He may

16   or may not be -- he is the best source possible, if, indeed,

17   these incidents occurred as these victims described them.  But

18   the very subject matter of prior sexual activity with minors

19   seems, to me, to be such a compelling area of inquiry.  That's

20   why I refer to your skill and Mr. Cariddi's earlier letter, as

21   to why I find it somewhat surprising.  I'm sorry.  I

22   interrupted you.  Go ahead.

23          MR. SAVITT:  There's obviously a lot of information

24   in the computer files, and there are terabytes full of

25   information that I'd rather not look at, because it would

8

1    probably take me longer than my projected lifespan to look

2    through all this stuff.  But as a practical matter, there's

3    nothing that the government turned over pursuant to our

4    request, including the 404(b) request, prior to June 27th that

5    would alert me to this.  And, you know, I can read pretty

6    well.  I have glasses.  I can read, and somewhat haltingly, as

7    Judge Nickerson once said, in a joking matter, to a lawyer

8    that kept interrupting me.

9             I can read, but I can't investigate, at this point.

10   I can't go out to Buffalo and talk to other people, now that

11   I'm aware of this entire topic, over the weekend and come up

12   with some reasoned defense to this.  Of course, I can

13   cross-examine them.  I can look at the 3500 materials and see

14   that they've already made misstatements, but I can't overcome

15   their testimony if it's put into the government's case in

16   chief with any rebuttal witness, because I don't have the time

17   for it.  I'm happy to go to trial next week.  I'd love to go

18   to trial next week because, frankly, that's what I was geared

19   to do, and I still hope we do that.

20             But if we put in this additional evidence, then I

21   really am being blind-sided.  It's not the same thing.  It's

22   not a question of a plan to deal with babies.  I don't think

23   I'm really splitting hairs here.  These are young woman who

24   are models, who claim that Mr. Baslan took advantage of them.

25   I understand that it's statutory rape, whether or not they

9

1   consented.  I understand all that.  But we're talking about a

2   different kettle of fish here in the universe of sex crimes or

3   child sex crimes.

4          THE COURT:  Not sure I agree with you, but I'm

5   listening.

6          MR. SAVITT:  And the problem that I have is that

7   we're going to be throwing in not only prior acts -- even if

8   you accept the government's position, as you're, apparently,

9   inclined to do or at least thinking in those terms, but then

10  we come in with alleged extortions, and blackmails, and sex

11  with mothers of these girls and the defendant allegedly

12  forcing them to sign affidavits that they never had sex with

13  him.  And that just brings in -- what it does is it appends a

14  much greater area of inquiry and -- to try without really any

15  notice than the original crime itself.

16         MR. SMITH:  Your Honor, if I could be heard in

17  response?

18         THE COURT:  Sure.

19         MR. SMITH:  As to just a factual matter, we did

20  provide a copy of the defendant's iPhone records to

21  Mr. Savitt.  That included contact information for both of the

22  victims, as well as photographs of one of them, taken in 2005,

23  we believe.  In addition, you know, he makes --

24         THE COURT:  Compromising photographs?

25         MR. SMITH:  No, not compromising photographs,

1   your Honor.  He makes reference to the fact that the victims

2   have identified affidavits.  That evidence was on the

3   defendant's computer.  He certainly knew that those things

4   were on his own computer, affidavits that had the names of the

5   victims, which purported to indicate that the victims had

6   never been sexually assaulted by the defendant, not signed

7   affidavits, draft affidavits, and -- which is consistent with

8   the victims' statements that he presented them with affidavits

9   that he wanted them to sign, following the occasions on which

10  he raped them, actually, years later.

11          I'd also note that, to the extent that Mr. Savitt's

12  making a due process argument, which comes up in his second

13  letter, due process has been considered in connection with 314

14  and 414, in four different circuits, the 9th, 8th, 7th and

15  10th, and each one of them found there is no due process issue

16  with either of those rules.  In addition, I note that in

17  U.S. v. Engenee (phonetic), the 10th Circuit case on point, it

18  specifically noted that -- as to the 15-day notice period,

19  that period protects against surprise and allows the defendant

20  to investigate and prepare cross-examination.  It permits the

21  defendant to counter uncharged crimes evidence with rebuttal

22  evidence and full assistance of counsel.

23          It's also consistent with the kind of notice that

24  courts have routinely found appropriate for other-act

25  evidence, as we cite.  Two weeks is commonly found to be

1    sufficient for other-act evidence.  And, finally, to the

2    extent that Mr. Savitt is saying that -- I mean, he's not

3    saying that we didn't provide notice that is timely under the

4    rule.  We obviously did.  What he's saying is that he's

5    surprised, but it's the government's obligation to provide

6    notice.  It is not our obligation to make sure that defense

7    counsel is informed by his own client of potential matters

8    that may be relevant.

9            THE COURT:  Well, I understand all of that.  My

10   concern is the basic fairness, under the due process argument,

11   that there's a Constitutional (sic) inherent in 413 and 414.

12   The argument here is the impact of this evidence may be so

13   severe -- I haven't spoken about 403 yet -- that it

14   requires -- in fairness, it requires additional time to

15   investigate.  That's what I understood.

16           MR. SAVITT:  That's correct.

17           MR. SMITH:  Your Honor, what I would say is that in

18   every case in which 413 or 414 is implicated, it necessarily

19   involves an allegation or a proved prior conduct involving

20   sexual assault and/or child molestation.  That's the sole

21   thing that the rule allows evidence of.  So that's true of

22   every case.  It was certainly true in the heads of the

23   drafters of the rule, when determining that 15 days was

24   appropriate.

25           MR. SAVITT:  I'm not quarreling with what was going

12

1  on in the heads of the drafters of the rule.  I don't know

2  what was going on in their heads, quite frankly.  I'm not

3  challenging the constitutionality of the rule.  What I'm

4  challenging is the government's methodology in this case of

5  pulling a fast one at the last moment.  But here's my

6  problem --

7          THE COURT:  I can understand your problem, but let's

8  avoid mischaracterizations.  I mean, there's a history here,

9  and without question your client has some responsibility

10  there.  If the government had come to me earlier seeking a

11  protection, in view of their concern that Mr. Baslan might be

12  inclined to attempt to undermine certain evidence or the

13  testimony of certain witnesses, I would be likely very

14  receptive to that, given what I have listened to and read.  So

15  the government's position is not -- they're not out to get

16  you, they're out to protect their case.  That doesn't solve

17  your problem.

18          MR. SAVITT:  Well, you know, the flip side of that

19  coin is that I do feel that I'm completely taken by surprise.

20  I'm trying to be as mild about this as possible.  Why is it

21  that the prosecutor cites the cases where judges have had an

22  opportunity -- and some cases as long as three months, in

23  Judge Ross' case -- before trial to conduct a hearing, to make

24  a reasoned judgment under all the rules, including 403, and

25  based on a record that is solid, and where some evidence has

1    been precluded, some of the proffers 413, 414 evidence has

2    been precluded, and some has been permitted --

3              THE COURT:  I haven't gotten there yet.

4              MR. SAVITT:  I understand.

5              THE COURT:  We're talking about the general

6    question, the admissibility of the tape of the evidence of

7    prior incidents.  The details to which you refer, I haven't

8    gotten to, and I'll call upon the government to give an

9    extended proffer, so that if there are some legitimate areas

10   within that sphere of evidence, I can make appropriate

11   rulings.  There's also 403 concern.  As I said before, you

12   know, that's -- nobody can -- the rules may make this

13   information presumptively admissible; I appreciate that and

14   understand it.  That doesn't mean it's necessarily admissible.

15   It's a question of undue -- quote unquote "undue prejudice,"

16   and God knows that the evidence may very well have a

17   significant impact on the case.

18             On the other hand, I propose, like my 404(b)

19   comment, it may very well go directly to the one issue we're

20   going to try in this case, which is whether or not Mr. Baslan

21   intended to do what the government alleges he was planning to

22   do.  I mean, that's -- I just -- I just cannot conceive of

23   that situation, where I would rule on this -- inadmissible in

24   its entirety.

25             Yes, sir.

14

1          MR. SMITH:  Just one other thing, I just wanted to

2     express that one of the reasons that the government wasn't

3     going to provide early disclosure of this information is that

4     the victims had identified that they were afraid of the

5     defendant.  One of them actually indicated to someone else

6     that he had at some point indicated to her that he could get a

7     hit man, that he knew people who he could hire to kill

8     someone.  So, I mean, certainly we could have sought a

9     protective order from the Court, but ultimately what we're

10    talking about and what we disclosed to counsel were witness

11    statements, which absent Rule 413 would not have been

12    disclosable early.  And, in fact, you know, the law on that is

13    quite clear that witness statements have to be disclosed by

14    the government after a witness has testified.

15         THE COURT:  If those witness statements include

16    allegations of prior crimes, you've got a 404(b) demand as

17    well.  And nobody, especially this Court, would be

18    particularly happy if that suddenly exploded in the middle of

19    trial.

20         MR. SMITH:  The issues come up, and 413 actually has

21    exploded immediately prior to trials in -- there is a 5th

22    Circuit case on point in which the government found out about

23    a prior victim a day before trial, and in which the judge

24    denied a recess that the defense had sought for additional

25    time that was affirmed on appeal to the 5th Circuit.

1        THE COURT:  As I said, there are a lot of cases.

2   I'm going to be reading them over the weekend.  Suffice it to

3   say, we will go forward.  And the likelihood is -- we won't

4   get into it in our opening statements.  The likelihood is this

5   evidence, to some extent, will be admissible.  I want an

6   extended proffer from the government, with respect to the

7   government, each of these witnesses shared with Mr. Savitt, so

8   that if there are more narrowly tailored objections to some

9   content, I can rule on that, hopefully, in advance of the

10  testimony.  And in advance of the defense, it's hard to make a

11  final 403 determination.

12        I mean, it's inconceivable to me that the issue that

13  I identified, the intent of Mr. Baslan, is not going to be

14  front burner in the course of this trial.  But, nonetheless,

15  403 is a critical aspect of this analysis, and I will not make

16  it until I have some sense as to how the case is going to be

17  defended.  All right.  I'd like to take advantage of your

18  presence here to address, albeit briefly, a couple of other

19  things, hopefully, in the interest of saving some time.  There

20  are some -- obviously the reference to possible sentence, as a

21  general matter, is not relevant and doesn't come in.  I say as

22  a general matter because I don't know who the witnesses are

23  going to be.  I don't know what they're facing, so forth and

24  so on, but as a general matter, yes.

25        Tell me, if you would, how the trial's going to

1    proceed.

2           MR. SMITH:  Your Honor, I expect that we'll call law

3    enforcement as our first several witnesses, and I think we're

4    currently planning to start with an NYPD detective who took

5    the original complaint, not for the content of that complaint.

6    And then the primary evidence the government will then have

7    will be the recordings themselves, introduced through the

8    agent who set up the recording system.  After that, we expect

9    evidence as to the search of Mr. Baslan's apartment.  We'll

10   introduce witnesses regarding the cracking of the encryption

11   on his hard drive as to his computer evidence.  And then the

12   government will either call or decide not to call the

13   confidential informant.

14          THE COURT:  All right.  Now, you make reference to

15   the encryption, and you have an application asserting a law

16   enforcement privilege, which certainly exists; it's not a

17   common source of controversy, but I don't know what

18   Mr. Savitt's claims are.  I don't know what his defense is.  I

19   recognize there is a limited, rather qualified, privilege to

20   law enforcement.  I'm sensitive to it.  But it's hard for me,

21   in the advance of specific testimony, absent Mr. Savitt's

22   representation.  But I acknowledge it, and if it becomes

23   relevant, then the privilege is going to have to give way.  If

24   not -- I mean, it's not going to be any argument, I assume,

25   that this material, encrypted or not, was on this device.

1          MR. SMITH:  And, your Honor, if you'd like --

2          THE COURT:  That's inconceivable to me, but --

3          MR. SMITH:  -- I can certainly give a fuller proffer

4    on what the witness can say that wouldn't implicate the law

5    enforcement privilege.  What we expect the witness who

6    actually decrypted the device to testify to is that he took

7    that device, which was a specific type of hard drive, which is

8    encrypted; he then bought the exact same device.  Using that

9    duplicate device, he put his own information on it, encrypted

10   it using their protocols.  And then the part that is sensitive

11   is he then developed a process that would decrypt his

12   duplicate.  He applied that process to the defendant's device,

13   and that decrypted the data.

14         The witness who has been involved in encryption

15   since he got his PhD in 1986 will also testify that if you

16   decrypt a device, the only thing you can possibly get is

17   either what information was there before or nothing.  There is

18   no way to decrypt a device and get something that wasn't

19   there.

20         THE COURT:  Is this going to be the focus of your

21   case, in any way?

22         MR. SAVITT:  I don't foresee that as happening.

23         THE COURT:  Any problem with the government's

24   proposal regarding the dissemination of the child pornography

25   rule, so-called silent witness issue?  You'll have access to

1   it; the government will have access to it; the jury will have

2   access to it; I will have access to it.  The public will not.

3           MR. SAVITT:  I certainly don't disagree that the

4   public shouldn't -- you know, should not have access to it.

5           THE COURT:  Well, last names of the victims, any

6   problem with that?  No reason to give full names, is there?

7           MR. SMITH:  Mr. Savitt objected to that, because it

8   is also the last name of the confidential informant.  We don't

9   think it implicates anything.  He obviously has identified who

10  the confidential informant is.  We don't think it implicates

11  anything to refer to him by his first name and refer to

12  victims -- the intended victims by their first name.  Their

13  relation with the confidential informant, it's also clear from

14  the tapes.  There's no way to take out the fact that they are

15  his sons and niece.

16          THE COURT:  As a practical matter, the

17  identification of the confidential informant will be there;

18  the testimony regarding the relationship will be there.

19          MR. SAVITT:  I just don't want the jury to come to

20  any undue inference that somehow the confidential informant's

21  life has to be protected.  I mean, I'm already hearing about

22  hit man for the first time in this case, which kind of makes

23  me a little more comfortable, because that's more familiar

24  ground for me, the kind of cases I tend to get assigned to,

25  but --

19

1          THE COURT:  Okay.  I think we're on the same page.

2     There's a projected objection to a hearsay objection to

3     statements of Mr. Baslan, tendered for the truth of the

4     matter.  Obviously, if that's the case, that's an objection

5     we'll use.  As a practical problem here, I don't know what

6     you're referring to, the statements of his on the tape?

7     You're referring to those or statements elicited by counsel in

8     examination of law enforcement witnesses?

9          MR. SMITH:  No, I'm talking solely about statements

10    elicited by counsel during the examination of law enforcement

11    witnesses that would be serve to be falsely --

12         THE COURT:  There's an objection asserted.  It

13    appears to me that it's being offered for the truth.  I'll

14    sustain the objection.  I think that's about it.

15         MR. SAVITT:  There is one other matter.  In reading

16    through the 3500 materials that I received yesterday morning,

17    there are references in the informant Jack's 3500 material

18    that -- his disclosure to agents, that he had checked into

19    psychiatric institutions on a number of occasions and also

20    attempted suicide on a number of occasions.  And I understand

21    that this is a very personal matter, but he is, presumably,

22    going to be the star witness for the government.

23         THE COURT:  He may not appear.

24         MR. SAVITT:  I don't have any hospital records.  I

25    don't have any information about --

1           THE COURT:  Do you have any information about that?

2           MR. SMITH:  We provided the information we have.  We

3   don't have any hospital records.

4           THE COURT:  Do you know the hospital?

5           MR. SMITH:  We -- I think we do know the hospitals.

6   I think they're actually in the 3500 material.  I believe

7   there were five hospitals.  We can identify for Mr. Savitt

8   where that's reflected.

9           THE COURT:  Has he not been asked about his

10  psychiatric history?

11          MR. SMITH:  We asked him about his psychiatric

12  history, and those questions -- or, really, those answers are

13  reflected in his 3500 materials.  We did not then go get

14  hospital records.  He represented that he was in psychiatric

15  hospitals a number of times, for a number of different things,

16  and we accepted those representations as sufficient.

17          MR. SAVITT:  Perhaps I overlooked it, because there

18  were a number of things that I had to read.  I didn't see the

19  name of hospitals, but that's not going to help me.

20  Your Honor is correct.

21          THE COURT:  Not likely.

22          MR. SAVITT:  I don't know what my cross-examination

23  can be involved in, other than accepting whatever it is that

24  Mr. Massery (phonetic) says as the truth.  I'm entitled to

25  know why he checked in or was committed to psychiatric wards,

1    when that happened, whether he's on medication today.  The

2    jury's entitled know whether this guy's a psycho or not.

3              THE COURT:  You're entitled to know what the

4    government knows about that.

5              MR. SAVITT:  But now that I know about it, how am I

6    going to find out this information?  Hospital isn't going to

7    give it to me.  I would have thought that the government has a

8    Giglio obligation to look at these hospital records and to

9    provide these records to me.

10             THE COURT:  You know, that's not a bad point.  I

11   assume he'd be willing to sign a waiver?

12             MR. SMITH:  I assume that's correct.

13             THE COURT:  Ask him.  And if so, provide it to

14   Mr. Savitt.  And if not, advise Mr. Savitt.  Okay.  Our

15   schedule next week, we're going to -- we start the trial

16   Tuesday morning first thing.  Judge Pollak is, as you know,

17   picking the jury Monday morning.  It's probably going to take

18   some time.  Go ahead.

19             MR. SAVITT:  May I?

20             THE COURT:  Sure.

21                  (Pause in proceedings.)

22             MR. SAVITT:  Your Honor.

23             THE COURT:  Yes, sir.

24             MR. SAVITT:  If I may, just for the record,

25   Mr. Baslan is now standing next to me.  He's asked me to

22

1    convey to the Court, with respect to one of the arguments

2    Mr. Smith made, that I have the contact information in the

3    discovery of these two women.  I know that there are dozens of

4    contact information.  Mr. Baslan actually advises me and

5    authorizes me to say that we're talking about 1250.  It's

6    really hard for me to divide, that the government would pick

7    on two of those as --

8            THE COURT:  No, I can appreciate that.

9            MR. SAVITT:  That's one thing.  The other thing,

10   Mr. Baslan did not tell me about that I found out about --

11   it's a little troubling to me.  I just want to alert the Court

12   to this.  We have a number of witnesses that -- potential

13   witnesses who would come in, should my client testify, as,

14   let's say, reputation witnesses or character witnesses,

15   however it develops.

16           Literally every single one of these witnesses -- I

17   don't know.  The government is great.  The FBI is terrific --

18   has been approached by the FBI, most recently as -- as recent

19   as two evenings ago.  And they have a right to do that; that's

20   not a problem.  Some witnesses spoke to them.  Others refused,

21   at one time or another.  One particular witness who was

22   married at one time to my client -- and I'm not going to go

23   into who she is, because she's married to a law enforcement --

24           THE COURT:  I'm sorry?

25           MR. SAVITT:  She's married to a law enforcement

23

1  individual, an important law enforcement authority outside of

2  the FBI.  And FBI agents spoke to him and said that there are

3  people out there who have been lying to Mr. Baslan, and they

4  will be prosecuted, and that his wife should be aware of that

5  before she testifies.  Now, I appreciate a public service

6  announcement, I really do.  It's nice.  It's sort of like

7  those announcements in crowded subways; inappropriate sexual

8  contact is not allowed just because it's crowded.  But this

9  kind of comes really close to the line, if it doesn't

10 transverse the line, of subtle and, perhaps, not so subtle

11 intimidation of witnesses.  I don't have any intention of

12 calling anybody to perjur themselves, I really don't.

13            THE COURT:  I would think not, Mr. Savitt.

14            MR. SAVITT:  Even if my client takes the stand, and

15 we're not sure he will, you know, I don't want to be in a

16 position where somebody is claiming that I'm suborning perjury

17 because a certain witness' account may differ from the

18 government's script.  But to go about doing this really makes

19 it difficult, if not impossible, for me to call these

20 witnesses.

21            There is currently a prosecution hanging over the

22 head of one witness, potential witness, but I can't use her as

23 a witness, because this is part of the -- you know, the

24 obstruction case, which never went anywhere.  And there was

25 supposed to be some evidentiary value in the computer storage

24

1   devices contained within contraption called a drobo.  And the

2   government's gone through this, and there just isn't child

3   pornography.  There's nothing of any evidentiary value.  There

4   isn't obstruction here at all.  I understand they have a

5   reasonable cause, or probable cause, to believe there is an

6   obstruction.  I've listened to various tapes, and I couldn't

7   agree with them more that they had a right to look into them.

8           They had a right to send Mr. Solladie (phonetic) in,

9   too.  I think he went too far twice, but they have that right,

10  and I don't quarrel with that.  But my concern is that if

11  there is no case, and there's a person out there who's still

12  looking at sort of a dormant complaint, whose bail conditions

13  prevent her from having any contact, directly or indirectly,

14  with Mr. Baslan or his defense team.  And we've had no contact

15  with her.  I certainly haven't.

16          THE COURT:  Who set those?

17          MR. SAVITT:  Those conditions were imposed -- her

18  name is Podita (phonetic).  So they were imposed by the

19  magistrate judge.

20          THE COURT:  You are relieved, you, personally,

21  Mr. Savitt.

22          MR. SAVITT:  Okay.  There's another --

23          THE COURT:  In the course of your representation and

24  responsibilities that go with it, you're at liberty to contact

25  any person.

NICOLE CANALES, CSR, RPR

25

1          MR. SMITH:  Your Honor, I just note that Ms. Tessler

2    is represented by counsel.

3          MR. SAVITT:  She's represented by Henry Mosserick

4    (phonetic).

5          THE COURT:  Fair enough.

6          MR. SAVITT:  Mr. Mosserick will trust me, but --

7          THE COURT:  You understand your professional

8    obligation.

9          MR. SAVITT:  Yes, I do.  There's another witness

10   whose been subpoenaed in connection with a grand jury

11   investigation, again, with the obstruction.  The subpoena is

12   still outstanding, and her lawyer, quite properly, told me

13   that we can't have any contact with his client, either.  And

14   she's made potential trouble, because beyond a character

15   witness -- because the government, I believe, wants to

16   introduce evidence of certain diapers and other baby

17   paraphernalia in Mr. Baslan's home after he was arrested.

18          And this particular witness knows why the diapers

19   are there, and it has nothing to do with sex at all, and I

20   would have to call her as a witness if the government seeks to

21   introduce this evidence.  And I'm also barred by this

22   continuing unnecessary pendency of a grand jury subpoena for

23   proceedings that, as I understand, are not even happening.

24          MR. SMITH:  Your Honor --

25          THE COURT:  What's your application?

26

1          MR. SAVITT:  My application is to be able to speak
2     to her, too.
3          THE COURT:  Why shouldn't he be able to speak to a
4     potential witness --
5          MR. SMITH:  He certainly can contact her.
6          THE COURT:  -- prospective or otherwise?
7          MR. SMITH:  Or her counsel, to the extent she's
8     represented.  And I would just -- the government disagrees
9     with the characterization of the investigation.  I just want
10    to put on the record we strenuously disagree.  Counsel has
11    misunderstood what the alleged obstruction was.  Particularly,
12    the obstruction wasn't that there was inculpatory evidence on
13    that device, but, rather, the defendant intended to destroy
14    the device and then claim the FBI had it.
15         THE COURT:  I understand.
16         MR. SMITH:  And to the extent that any decision
17    that the Court is going to make is based on whether or not
18    that continues to be an ongoing investigation supported by
19    facts, the government is prepared to make an ex parte
20    submission on that basis.
21         THE COURT:  This is a separation of powers.  You
22    have your responsibilities.  One hopes you're pursuing them in
23    an appropriate professional standard.  Mr. Savitt has his.  He
24    is at liberty to speak to, subject to counsel -- other
25    counsel's limitations, or authority, permission, to anybody

27

1  who may appear as a witness, for him or for the government,

2  period.  End of suggestion.  Any limitation to the contrary

3  set by the magistrate is vacated, with respect to counsel.

4          MR. SAVITT:  Thank you, your Honor.  With respect to

5  the witness whose married to a law enforcement officer, I hope

6  that what I'm saying is superfluous, and I believe it is, but

7  should she testify, should she at the end testify, I trust

8  that no adverse reaction will be held against her husband,

9  certainly, who has nothing to do with Mr. Baslan.

10         THE COURT:  I got enough to do here.

11         MR. SAVITT:  I know you do.  I'm just saying that

12 because I'm concerned, too.  I'm concerned about my witnesses

13 just like the government's concerned about theirs.

14         THE COURT:  We understand.

15         MR. SMITH:  Your Honor.

16         THE COURT:  Yes.

17         MR. SMITH:  There's one -- I have a couple questions

18 about the rulings you just made.  There's also one I think you

19 didn't make.  We requested permission if we seek to put in

20 Mr. Baslan -- the signed statement by Mr. Baslan and not put

21 in the entire post-arrest statements --

22         THE COURT:  Why do you need my permission?  You put

23 in what you put in.

24         MR. SMITH:  We would seek to preclude questioning on

25 the remaining statements based on the --

1          THE COURT:  This is a hearsay objection.

2          MR. SMITH:  That's the hearsay objection.

3          THE COURT:  Well, we'll see.  It's very hard in that

4   context to make a -- first of all, to make an in advance

5   ruling.  Second of all, some of it may have to come in just so

6   that we understand what's being said.  If he says one thing on

7   your statement and he says a contrary thing on his, I think

8   he's entitled to bring it out.  I could instruct the jury that

9   what he says -- you know, I can give them the limitation

10  instruction, but the jury should hear the whole thing.

11         I don't want to nickel and dime objections.  When

12  there's two statements that relate to the same subject, one

13  says one thing, one says the other, it seems to me, just as a

14  matter of common sense, you give them both.  And I do know

15  that there were, in fact, two sessions with Mr. Baslan, one

16  sit-down.  There was the initial questioning.  Then the agent

17  shared some information with him, and then the conversation

18  changed.  So if that's the sort of thing you're referring to,

19  chances are I'm going to let it come in.

20         MR. SMITH:  I just wanted to also ask what form you

21  would like of the proffer of the victims' statements.

22         THE COURT:  Just send me a letter.  Send us the

23  letter.

24         MR. SMITH:  I'm happy to do that.  I think it's

25  substantially what the fact section --

1    THE COURT:  Mr. Savitt alluded to other things in

2    his statement here in court.

3    MR. SMITH:  We'll make sure we put it in thorough

4    form and send a letter.

5    THE COURT:  If they're in there and I just missed

6    them, God knows you've favored me with a lot of information in

7    a very short period of time.  Later today I'm going to favor

8    you with one of my own.

9    MR. SMITH:  I just wanted to notify for the Court

10   that our communications with the confidential informant have

11   been through counsel.  He's represented, at this point.  And

12   Byshawn (phonetic) Hecker at Devil Boys --

13   THE COURT:  What's his status?  Tell me about him,

14   if you don't mind my asking.

15   MR. SMITH:  I mean, his status, at this point, is

16   that he's no longer a signed up confidential informant.  As

17   we've indicated in papers before, he has some criminal

18   exposure.  No decisions have been made as to him.

19   THE COURT:  Is he going to testify?  Will he testify

20   if you call him?

21   MR. SMITH:  I expect that if we call him he will

22   testify.  I mean --

23   THE COURT:  Does he have any charges pending?

24   MR. SMITH:  He has no charges pending.  I would also

25   ask that prior to trial the documents on the docket filed by

30

1   the defense that identify the last name of the confident

2   informant be sealed, so it doesn't then just end up in

3   newspaper articles.  The confident informant's last name,

4   which is the same as the last name of the victims -- the

5   intended victims.  Sorry.

6           THE COURT:  Tell me what -- you're asking to seal

7   those documents?

8           MR. SMITH:  What we'd ultimately like is the

9   redacted version that doesn't have that last name mentioned.

10  We certainly have no problem with the contents, but to the

11  extent that the Court is instructing that that name not be

12  mentioned, to prevent --

13          THE COURT:  I'm uncomfortable with that.  I realize

14  they're relatives, and people can put two and two together.

15  I'm just not comfortable.  Do you care?

16          MR. SAVITT:  I do care.  If the government was

17  concerned about it in advance, and the Court had ruled that I

18  was not permitted to mention the informant's last name, of

19  course I would abide by the order of the Court.  I'm not

20  interested in creating a problem for the children, really I'm

21  not.  I'll do whatever it is and agree to whatever the Court

22  believes is the appropriate remedy.  This isn't a question of

23  just getting young children who don't know anything and

24  they're innocent into some sort of a cloud.

25          THE COURT:  Absolutely.

1    MR. SAVITT:  But by the same token, based on the

2    3500 materials that I read yesterday, I also found out for the

3    first time there were no charges against Jack, and I also

4    found out that he admitted that he was involved in sex with

5    underage girls.  He was concerned about that because -- he

6    said that they were in Mr. Baslan's computer.  And at some

7    point -- I don't know if he'll be prosecuted or not, but he'll

8    be a registered sex offender, and that's going to be available

9    to everybody to know as a warning.  So, again, I'm not

10   interested in creating aspersions.  I'll do whatever the Court

11   says.

12   THE COURT:  Let's seal the documents.  I'm inclined

13   to call the defendant -- the informant by his full name,

14   and -- although I guess people can put two and two together.

15   But, you know, the concern for the kids is compelling, and let

16   me rethink that.  I'll let you know later today.

17   MR. SMITH:  Thank you, your Honor.

18   THE COURT:  For the time being, we'll seal it.

19   MR. SMITH:  And one final request, the defendant has

20   indicated that he has some potential witnesses.  We'd ask that

21   he disclose that in advance of the defense case, like at the

22   start of jury selection or at least on that day.

23   MR. SAVITT:  Well, I'm happy to do it.  The problem

24   is that I don't know who's going to be willing to testify, at

25   this point.

32

1        THE COURT:  Willing is one thing, but planned

2   witnesses is another.  Why don't you let them know.  I'll be

3   around if you need me.

4        MR. SAVITT:  Just as housekeeping, I don't know why,

5   but --

6        THE COURT:  I don't like the word myself.

7        MR. SAVITT:  I don't know what it means.  Mr. Baslan

8   doesn't have any access to suits.  However, I understand that

9   there are some clothing in your Honor's closet in the

10  courtroom.

11       THE COURT:  Emergency stash.

12       MR. SAVITT:  But we have quite a nice stash in Judge

13  Ross's courtroom as well, in connection with other cases.

14  Some courtesy, actually, of Ms. Marosi's fiance.  In any

15  event, he'll be able to hopefully fit Mr. Baslan into those

16  clothing.

17       THE COURT:  Hopefully or not, we're going to start

18  on time.

19       MR. SAVITT:  I understand.  I understand.  This is

20  not a subterfuge to try to push things off to go shopping for

21  a week.

22       THE COURT:  I don't think you'd do that, Mr. Savitt,

23  needless to say.

24       MR. SAVITT:  Since Mr. Baslan is in the courtroom

25  today, and since I happen to have all the 3500 materials, it

33

 1   may save time, as well as some CJA funds, if your Honor can

 2   prevail upon the marshals to allow Mr. Baslan to look through

 3   the 3500 materials, and then I'll collect it from him at the

 4   end of the day.

 5          THE COURT:  Seems like appropriate accommodation.

 6          MS. DEMAS:  Your Honor, I would note that I had

 7   already -- to effectuate the review by the defendant of

 8   physical evidence, to the extent he wants to, there is a

 9   proper room available for after this conference, and he's

10   certainly free to review his 3500 in that room.

11          MR. SAVITT:  You're Honor, we'll take advantage of

12   that.  Thank you.

13          MR. SMITH:  Your Honor, I wanted to bring to

14   the Court's attention -- you may already know this, but the

15   Long Island Railroad is scheduled to strike in the midst of

16   this trial.

17          THE COURT:  5:30 this morning I heard it for the

18   first time, and I said, oh, my heavens.  We can hope for the

19   best.  If it comes to pass, we deal with it, but we're not

20   going to sit and wait for these folks to work out a contract.

21   I'm very much aware of it.  We'll see -- maybe we'll get lucky

22   and get a jury, but, invariably, we'll have long hours.  And

23   if the train does go out, traffic is just going to be an

24   abomination, so we'll have to deal with it in some fashion.

25   Tuesday, Wednesday, Thursday and Friday of next week, my hope

34

1   is to continue a four-day schedule.  The following week,

2   Monday through Thursday, of course, once we complete the

3   proof, we will immediately convert to a five-day schedule.

4           MR. SMITH:  Your Honor, I -- actually, I forgot to

5   mention something.  The government has selected CD images.

6   We're just modifying our CD, because we need to call witnesses

7   to identify they're real children.  We're adding one image

8   that a witness can identify as a real child.  We'll have a

9   copy of that CD for the Court today, and I'll put in a letter

10  describing what we're talking about and what our plan is, as

11  far as introducing it.

12          THE COURT:  I know as a legal matter they have to be

13  real people.  But do we really need a witness to testify

14  they're real people?

15          MR. SMITH:  We asked the defense to stipulate, and

16  they indicated they wouldn't, unless we stipulate that the

17  defendant himself was not involved in the production of any

18  child pornography, which --

19          THE COURT:  I'm not going to get involved in horse

20  trading.  Seems to me an unnecessary witness --

21          MR. SAVITT:  That wasn't quite it.  Maybe there's a

22  misunderstanding that the defendant was not involved in any

23  way, you know, with any of these children.  Okay.  Call it a

24  production of child pornography.  My concern is that if I

25  stipulate that these are real children, that the jury may

35

1   be -- may decide that Mr. Baslan was involved in the

2   production of those materials.  I think it can -- I don't

3   know.  I can't do this, because I'm not smart enough, but the

4   government has people out there that can probably tell us

5   where these videos came from, I'm sure.

6          THE COURT:  I'll leave that to you gentlemen.

7          MR. SAVITT:  All right.  Not a problem.

8          THE COURT:  As I said, I'll be around.  I'll be

9   available.  Judge Pollak first thing Monday morning, as we

10  agreed.  If you need to see me, just give Gabby a call or one

11  of my clerks a call.  Mike has the case.  And we'll see you

12  next week.

13         MR. SAVITT:  I believe we've gone through this, but

14  in the excise of caution, we agree to the selection of the

15  jury by the magistrate judge.

16         THE COURT:  My notes so indicate.

17         MR. SAVITT:  Okay.  Just want to make sure.

18         MR. SMITH:  Thank you, Judge.

19              (Proceedings adjourned.)

20

21                        *  *  *

22      I certify that the foregoing is a true and correct
    transcription of the record from proceedings in the

23  above-entitled case.

24  /s/ Nicole Canales                May 26, 2015
        Nicole Canales                   Date

25